# UNITED STATES *v.* MUELLER.

# MUELLER *v.* UNITED STATES.

APPEALS FROM THE COURT OF CLAIMS.

Submitted December 22, 1884.—Decided January 19, 1885.

Under contracts to furnish stone to the United States for a building, and to saw it, and cut and dress it, all as "required," the contractor may recover damages for enforced suspensions of, and delays in, the work, by the United States, arising from doubts as to the desirability of completing the building with the stone, and on, the site, which involved the examination of the foundation and the stone by several commissions.

A contract to furnish "all of the dimension stone that may be required in the construction" of a building does not include dimension stone used in "the approaches or steps leading up into the building."

The facts in this case are stated in the opinion of the court.

*Mr. Enoch Totten* for Mueller.

*Mr. Solicitor-General* for United States.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

Before July 23, 1872, the United States advertised for proposals for furnishing and delivering at the site of the new United States Government building to be erected at Chicago, Illinois, "all of the dimension stone required in its construction." John M. Mueller submitted a proposal, dated July 23, 1872, "to furnish dimension stone in accordance with the attached advertisement," at specified prices. This proposal was accepted by a notice to him which said : " You are hereby notified that your proposal to furnish all the dimension stone that may be needed for the exterior of the new custom-house building to be erected in the city of Chicago," for specified prices, "the stone to be delivered at the site of the building, and in such quantities and at such times as the Department, or its duly authorized agent, may direct, is accepted."

On the 2d of September, 1872, a written contract, in pursuance of such advertisement and proposal, was made between the United States and Mueller, which described Mueller as the

person "to whom was awarded a contract for certain dimen-
sion stone required in the construction of the new custom-
house, court-house, and post-office building, at Chicago, Illinois,
on his bid received under advertisement, and dated July 23,
A.D. 1872." By the contract, which was made on behalf of the
United States by the supervising architect of the Treasury De-
partment, Mueller agreed to furnish from his quarry, "and de-
liver at the site of the aforesaid buildings, all of the dimension
stone that may be required in the construction of said build-
ing," and to furnish and deliver 100,000 cubic feet of the stone
on or before the 1st of January, 1873, "and the remainder at
such times, and in such quantities, as may be required" by the
supervising architect, and the United States agreed to pay to
Mueller certain specified prices. The stone was known as
"Buena Vista free stone."

On the 9th of December, 1871, Mueller entered into another
contract with the United States, on his bid made under an
advertisement, by which he agreed to furnish the cutting of the
Buena Vista free stone to be used in the basement story, sill
and lintel course of said building, in accordance with a specifi-
cation attached, by which he was to deliver the stone, cut and
ready for setting, "promptly and as required by the superin-
tendent, so that the progress of the work will not be inter-
rupted." By the contract, all the stone for the area wall was
to be cut, lewised and ready for setting on or before the 1st of
March, 1873, and the pier-stones and sill and lintel course as
soon thereafter as required by the superintendent.

On the 18th of July, 1873, Mueller entered into another con-
tract with the United States, by which he agreed "to furnish
such number of mechanics and laborers as may be required
from time to time" by the superintendent, and all of the tools
and materials necessary to cut, dress, and, if necessary, box, all
of the stone required for the construction of said building, "and
to cut such stone in such manner and at such place as may be
required" by the superintendent, and to furnish, free of cost to
the Government, all shops, sheds and machinery necessary to
cut, dress and box said stone; and it was agreed, that all ma-
terials required for the cutting or boxing of said stone should be

supplied only upon the requision of the superintendent, and that not less 250 stone-cutters, with the necessary complement of mechanics and laborers, should be employed "at any time during the progress of the work;" Mueller to be paid for the labor full market rates "of the labor" actually performed, increased by 15 per centum, and for the materials the lowest trade prices, increased by 15 per centum thereof.

On the 4th of August, 1873, Mueller entered into another contract with the United States, on a bid of his, by which he was to furnish all the tools, machinery, shops and sheds, &c., required to saw, and to saw such of the stone supplied under his contract of September 2, 1872, as might be found necessary by the superintendent, the sawing to be done at such times and in such quantities as the superintendent might require, and Mueller to be paid a specified price for all stone sawn.

Mueller brought a suit, on these contracts, against the United States, in the Court of Claims, to recover sundry items, and, among them, pay for certain stones furnished, for which he had not been fully paid; also damages for suspensions and delays, enforced and caused by the United States, of work under the contracts, which kept Mueller and his men, machinery, plant and capital idle; also damages because dimension stone was required for the construction of "the steps and approaches leading up into said building," but he was not allowed to furnish it.

The Court of Claims allowed to him $20,000 as damages for suspensions of the work, enforced by the United States, and $2,758.25 additional pay for the stones referred to, and rejected all the other items sued for, and rendered a judgment in his favor for $22,758.25. Among the items rejected was the claim for damages in respect to the stone for the "steps and approaches." The United States have appealed because of the allowance of the $20,000; and Mueller has appealed as to the item for "steps and approaches."

The finding of facts by the Court of Claims as to the $20,000 item is this: "On the 13th of May, 1875, claimant was directed to stop shipment of stone until further orders, and on

the 15th he was directed to stop cutting. On the 25th of May he was notified formally, in accordance with the language of the contract, 'that the party of the first part does not require that any more stock should be delivered at the present time. Whenever more is required you will be notified.' On the 16th of October, 1875, he was notified to resume cutting. In the summer and fall of 1877, when the work was nearing completion, he was directed to discharge workmen from time to time, so that the number was reduced below the minimum fixed in his contract. The work of sending forward stone was also resumed about the middle of October and continued until about the 1st of December. The second suspension lasted until about the middle of February. These suspensions arose from a well-founded doubt as to the desirability of completing the Chicago custom-house with the Buena Vista stone, and on the site. Several commissions made lengthy and exhaustive examinations of the foundation and stone, pending which the United States stopped the work. The damages resulting to the claimant therefrom were $20,000."

The court was of opinion, that, as the delay was caused by a contemplated change of purpose in regard to the stone and the site, the enforced suspension and delay were unjustifiable, and not covered by the stipulations in the contracts that the stone and the work should be furnished as "required." 19 C. Cl. 591. We are of opinion that the court was correct in its view. *United States* v. *Smith*, 94 U. S. 214.

The finding of facts as to the "steps and approaches" was as follows: "The approaches or steps leading up into the building required, according to the plans for said building, a large quantity of cut dimension stone, to wit, 17,473.10 cubic feet, and, although the claimant was able and willing to furnish the same under his agreement, the officers of the United States refused to permit him to furnish the same, but it does not appear that he made any proposition to furnish it. The defendants determined that granite would be more suitable than sandstone for these approaches, and the amount required was furnished by other parties. If the claimant had been allowed to furnish sandstone, he would have made a

profit of $6,115.58." The court was of opinion that there was no violation of the contract. 19 C. Cl. 592.

The expression "steps and approaches leading up into said building," used in the petition, and the expression "approaches or steps leading up into the building," used in the finding of facts, are, perhaps, somewhat vague. But we must infer that the expression used in the finding means structures wholly outside of the building, not a part of it, but constituting a means of ascent on the way into the building. In this view, the stone used in the approaches or steps was not stone used in the construction of the building, within the meaning of the first contract and the original advertisement. The approaches may have been of cut dimension stone, and necessary for use in connection with the building after it was constructed; but, in the absence of anything more definite in the finding, it cannot be said that they were in the building, or a part of it.

*Judgment affirmed.*