G. HAROLD GILPATRIC, TREASURER OF THE STATE OF CONNECTICUT, *vs.* THE NATIONAL SURETY COMPANY ET AL.

Third Judicial District, Bridgeport, April Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

A surety-company bond given to the State in 1907 for the protection of the customers of a private banker against loss, as required by Chapter 86 of the Public Acts of that year, is not terminated, nor is the surety released, merely because of the repeal of that statute, if it is immediately re-enacted in a slightly changed form; for so long as the provisions of the bond meet the statutory requirements existing from time to time, and the parties see fit to keep the obligation alive, it remains a valid and effective instrument for the purpose for which it was given.

Subsequent legislation cannot enlarge, vary, or in any way modify the obligation of a surety as expressed in his bond; but differences between Acts which are wholly negligible cannot affect the surety's *status*.

In the present case the Act of 1911 (Public Acts of 1911, Chap. 197) recognized and continued in force all bonds then on file with the State treasurer which had been accepted in compliance with the Act of 1907, and the Act of 1915 (Public Acts of 1915, Chap. 328) did the same with respect to bonds already deposited "in accordance with the provisions of" the Act of 1911. *Held* that this did not mean the imperative rejection of every bond deposited before

Gilpatric *v.* National Surety Co.

1911, as contended by the surety company, but must be construed to include all bonds of an earlier date which the Act of 1911 had in terms adopted as complying with its own exactions.

A private understanding between the principal and surety upon such a bond, cannot control or in any respect affect the measure of the surety's liability to the State as defined by the strict terms of the bond.

It is competent for the State, obligee in such a bond, to designate its treasurer as an appropriate officer to represent it in enforcing the terms of the obligation when that becomes necessary or advisable for the adequate protection of the customers of the private banker; and such an appointment followed by a suit in the name of the State treasurer against the surety, does not impair any of the contract rights which it had before such machinery was created by legislative enactment.

The failure of the bank commissioners of the State to make the examination of the private bank required by law, is not available as a defense to the surety in a suit upon the bond for the benefit of the bank's depositors; for if they are free from fault, they cannot be made to suffer through the default or failure of such subordinate State agency.

Interest is recoverable against the surety upon a penal bond, from the date when the amount required to satisfy the obligation is brought definitely to his knowledge; and that date in the present case was *held* to be the day on which the action was commenced.

Where the means for ascertaining the amount due are accessible to the party to be charged, interest will not be withheld on the ground that the damages are to be regarded as unliquidated.

Paragraphs of a finding which state conclusions of law rather than facts, are nevertheless harmless if they are sustained by other and unchallenged parts of the finding, and by the evidence.

A finding accords with the rule (Practice Book, p. 232, § 103 )although it states only those operative or ultimate facts which are essential to present the legal questions involved.

The trial court is justified in refusing to find specific facts which, if found, cannot materially affect the result.

What one fails or omits to do is not infrequently of greater weight, in its relation to a given situation, than his discoverable positive acts.

On two or more occasions, widely separated, a surety company requested the principal named in the bond to make arrangements for the substitution of another surety in its place, but nothing further was done in the matter. *Held* that such request was not inconsistent with a finding that the surety company neither cancelled the bond nor gave notice of any cancellation to the obligee.

Argued April 15th—decided June 10th, 1920.

ACTION to recover the amount of a penal bond alleged to have been forfeited, deposited with the State treasurer by a private banker for the protection of his customers, who afterward suffered loss through his bankruptcy, brought to and tried by the Superior Court in New Haven County, *Warner, J.;* facts found and judgment rendered for the plaintiff for $10,583, and appeal by the defendant Surety Company. *No error.*

The plaintiff is the immediate successor, as State treasurer, of the original plaintiff who brought the action while holding that office. The defendant Del Grego was for twenty-eight years before March 6th, 1918, engaged in business as a private banker in New Haven. On September 21st, 1907, he, as principal, and the defendant Surety Company as surety, executed a bond for $10,000 to the State of Connecticut, conditioned that as Del Grego "has applied to the treasurer of the State of Connecticut for a certificate to conduct a private bank, now, if the said Eugene S. Del Grego shall so conduct such private bank as to fully protect from any loss or injury all the customers of such private bank, in accordance with chapter 86 of the Public Acts of 1907, then this obligation shall be null and void, otherwise of full force and effect." This was deposited with the State treasurer, who thereupon issued to Del Grego a license which has never been repealed or cancelled. From that time up to and inclusive of September 23d, 1916, Del Grego paid each ensuing annual premium in advance, and the Surety Company accepted every such payment "without in any way circumscribing, limiting or restricting its liability under the bond." The Surety Company during all this period recognized and treated the bond as an existing one, and one upon which its suretyship was conditioned for Del Grego's compliance with the laws of this State relative to private bankers. In 1914 it

attempted to raise the annual premium from $50 to $100, but was unsuccessful and abandoned the attempt.

On September 7th, 1917, the Surety Company notified Del Grego and the State treasurer's office in writing that it cancelled the bond, its action to become effective September 21st following—the date to which the premium had been paid in advance in 1916. This was the first action ever taken by the Company declaring the bond cancelled, or giving notice to that effect. The Surety Company had never made any effort to remove the bond from the State treasurer's office, or to have Del Grego's license revoked, nor had it ever made any effort after the execution of the bond to ascertain Del Grego's financial condition.

Del Grego was adjudicated a bankrupt on March 6th, 1918, and was at that time indebted to his customers to an amount of more than $22,000 in excess of his total assets. This indebtedness had existed since August, 1917. The adjudication was at once referred by the United States District Court to a referee in bankruptcy having jurisdiction, for full and appropriate proceedings, and orders in pursuance thereof were duly issued. At that time there were one hundred and forty-five depositors in Del Grego's bank, all of whom were depositors on September 1st, 1917, to whom he was indebted on their deposits in the sum of $37,854.09, and claims for that amount have been proved and allowed. They have received a dividend of thirty per cent on their claims, and there is now in the hands of Del Grego's trustee, the sum of $3,968.99 in cash remaining after the payment of this dividend and the expenses of settlement of the estate. These depositors and customers have lost and are damaged by the failure, bankruptcy and negligence of Del Grego, and, upon the application of his trustee, an order was issued by the referee in bankruptcy having jurisdiction, directing

the then treasurer of the State—the plaintiff's immediate predecessor in that office—to bring suit upon the bond. The suit was so brought to recover the amount of the bond for the benefit of Del Grego's customers and depositors, as the surety has refused and neglected to pay it, although due demand has been made of the surety to that effect.

Of the whole amount of deposits already referred to, the sum of $10,462.91 was deposited before August 22d, 1911, including interest thereon. Chapter 86 of the Public Acts of 1907 was repealed August 22d, 1911, and the treasurer did not thereupon require a new bond of Del Grego, or take any action concerning the bond as already furnished, but permitted him to continue his business under the original license. The Surety Company did not, upon the repeal of the Act of 1907, give to the treasurer or to any one else any extension certificate or other evidence that the original bond had been extended or continued in force, but did, as already found, continue to receive annual advance payments of the premium thereon.

All the material facts so found, except that Del Grego's insolvency had existed since August, 1917, were embodied in the complaint, which also alleged specifically that "the full amount of said bond is necessary to protect the customers and depositors of said Eugene S. Del Grego, whose estate is in process of settlement."

The defendant company demurred, for substantially these reasons: Because (1) the plaintiff was without authority to bring the suit; (2) the referee was without authority to direct it; (3) the trustee had no interest in the relief sought; (4) the proceeds of the bond are not assets of the bankrupt estate; (5) all the interested persons are not parties; (6) the State has suffered no damage; (7) the State is not acting on behalf of the

parties having liquidated claims, or on the relation of injured customers; (8) no definite loss to depositors has been ascertained; (9) the legislation of 1915 authorizing a suit by the State treasurer does not apply to the bond given under the Act of 1907; and (10) the repeal of the last-named Act terminated the bond and released the Surety Company from liability under it.

The demurrer was overruled (*Curtis, J.*) and four defenses were then interposed: (1) Setting up the written agreement of Del Grego, upon which the Surety Company executed the bond, and denying the essential allegations of the complaint; (2) alleging notice by the Company in January, 1911, to Del Grego, that it would not longer continue on his bond, and a request to him to terminate its liability by substituting other surety, and the subsequent termination of its liability by the repeal of the Act of 1907; (3) alleging failure of the State bank commissioners to make the examination of Del Grego's bank as required by law; (4) alleging the failure of the State treasurer to cancel Del Grego's license upon the repeal of the Act of 1907, and the release of the surety by reason of that claimed default.

A demurrer to the second, third and fourth defenses was sustained (*Keeler, J.*). A reply to certain parts of the first defense averred that Del Grego's insolvency and inability to pay his depositors existed through September, 1917. This was demurred to on the ground that the default of the bankrupt had been legally determined as of March 6th, 1918. Action on this demurrer was withheld until the final determination of the case on its merits, when it was overruled.

Certain interlocutory rulings on motions to expunge and to make more specific, call for no independent statement or consideration.

The court rendered judgment for the plaintiff to recover the full amount of the penalty named in the

bond, $10,000, with interest thereon from August 20th, 1918, the date of the bringing of the action.

The appeal assigns error (1) in the make-up of the finding and in the exclusion from it of certain claimed facts; (2) in overruling the defendant's demurrers and in sustaining the demurrer of the plaintiff; (3) in rulings on evidence; and because (4) liability on the bond was terminated by the repeal of the Act of 1907 as to deposits made after that date; (5) the Surety Company was not liable for interest in excess of the full penalty named in the bond; (6) the taking of premiums by the Company after the repeal of the Act of 1907 neither extended the bond beyond that date, nor made the Company liable to depositors of a date subsequent to it; (7) the defendant Company had neither by act nor omission kept the bond in force for the benefit of such subsequent depositors; (8) the condition of the bond "limited it to" the Act of 1907, "and that to extend it beyond this statute would be in violation of the Constitution of the United States"; and (9) no subsequent legislation could extend or continue the bond without the Surety Company's consent.

The evidence has been certified upon the appeal for a correction of the finding.

*Albert H. Barclay*, for the appellant (defendant National Surety Company).

*Charles J. Martin*, with whom were *Louis M. Rosenbluth* and *Joseph T. Anquillare*, for the appellee (plaintiff).

CASE, J. None of the grounds of attack upon the finding are well based. If we assume the correctness of the claim that certain paragraphs embody conclusions of law rather than statements of fact, these are nevertheless fully sustained by other and unchallenged

parts of the finding and by the evidence. If these are technical defects of the kind complained of, they are not harmful to the defendant.

It is also urged that conclusions of fact are found "without stating the facts upon which these conclusions are based." There is nothing necessarily irregular in this. So far as appears, the finding was made to conform to the rule—occasionally overlooked—which requires it to "avoid the recital of evidence and all evidential matters, and be confined to a statement of those operative or ultimate facts" essential to present the legal questions involved. Practice Book (1908) Rules, § 103, p. 232.

The claim that the court found, without evidence, conduct of the defendant Surety Company which encouraged depositors and the State treasurer to believe that the bond was still in force, is not sustained. It ignores the evidential quality of negative facts. What one fails to do is not infrequently of greater force in its relation to a given situation than his discoverable positive acts. It is apparent from the nature of the case presented that the trial court correctly regarded this principle as of direct application here.

Nor is there any inconsistency in the finding that the Company neither cancelled the bond nor gave notice of such cancellation, with the unquestioned fact that on two or more occasions, separated by years, it requested Del Grego to make arrangements for the substitution of other surety in its place. This, in itself, was not a cancelling of the bond, or a notice of cancellation, and it appears neither that Del Grego took action upon the suggestion, nor that the Company pursued it further.

The refusal of the court to find certain specific facts claimed by the defendant to have been established upon the trial, was justified by their immateriality in the

situation presented by the record. They could not impair the legal effect of the facts found or materially affect the result. The finding must, therefore, stand as made.

While the range and variety of the remaining assignments of error perhaps suggest a broader field of inquiry, the defendant's case rests essentially upon two claims, either one of which must be established to avoid a judgment for the plaintiff. These are: (1) that the bond in suit was terminated by the repeal of the Act of 1907, in compliance with the requirements of which it had been deposited with the State treasurer; and (2) that in any event the State treasurer was without authority to bring an action upon it.

Before 1907 our legislation on the subject of private banking was confined to certain restrictions upon the methods of persons and concerns so engaged, with a prescribed penalty for a violation of its terms. In that year the General Assembly re-enacted these provisions with some extension of their scope, and for the first time required all persons engaged in the business to deposit with the State treasurer "a bond of ten thousand dollars, or . . . securities of the value of not less than said amount, to the acceptance of said treasurer, conditioned for the protection of their customers." Public Acts of 1907, Chap. 86. See General Statutes, § 3942. Although parts of the Act are somewhat clumsily phrased, its plain and main purpose was to require this security not only as a prerequisite to starting such a business, but as equally essential to the further continuance in business of those already engaged in it. Four years later the General Assembly repealed the statute and enacted in its place another of the same scope and purpose, which—apart from certain trifling verbal changes—was identical with the repealed Act save in the express permission it gave

to have the bond "secured either by a surety company of recognized standing or by an individual or individuals owning real estate within the state." It contained also, in terms substantially the same as those of the earlier Act, a provision expressly relieving from its prohibitions "such firms or individuals, doing business as private bankers under their own name or names, as have deposited with the state treasurer a bond" of the required amount and condition. Public Acts of 1911, Chap. 197.

This Act remained in force until 1915, when it was in turn repealed and its main provisions, together with a requirement of a bond for the increased amount of $20,000, were embodied in Chapter 328 of the Public Acts of that session, which contained, also, this qualification of the last requirement: "Any bond which has already been deposited with said treasurer in accordance with the provisions of chapter 197 of the public acts of 1911 shall be accepted under the provisions of this act by the treasurer as in compliance herewith so long as such bond continues in force." This Act also contained the following wholly new provision: "In the event of the insolvency or bankruptcy of any private bank, or upon the order of any court of competent jurisdiction, the treasurer shall collect such bond or bonds, or sell such securities, or both, and pay the proceeds thereof to the receiver or trustee in bankruptcy of such private bank or to such person or persons as shall be named in such order of court, such proceeds to be used to pay the depositors and customers of such private bank." The duty thus imposed upon the State treasurer to collect the bond of an insolvent or bankrupt banker, is continued in Chapter 397 of the Public Acts of 1917, which repealed the inconsistent parts of the Act of 1915, while re-enacting its main provisions, and further increased the amount of the required bond to $40,000, with this

added provision: "Any bond or security which at the time this act takes effect is on file or deposit with said treasurer in accordance with the provisions of law in effect at the time of such filing or deposit, may be accepted by the treasurer, so long as such bond continues in force, to the amount of such bond, on account of the aggregate amount of the bond required by this act." See General Statutes, § 3942.

It is apparent that the bond involved was filed with the State treasurer to meet the then new legislative requirement of 1907, and to secure to Del Grego an uninterrupted continuance of the business in which he had long been engaged. The fact that it makes reference to the statute which called for its execution, is significant only as defining its scope and purpose; it in no sense, either expressly or by implication, limits the term of its effective duration. That, obviously, depends upon other considerations in which the interests of the class whose ultimate protection is primarily involved are of grave importance. So long as the provisions of its undertaking continued to satisfy the statutory exactions in such possible changed requirements as subsequent legislation might import into the law, the bond remained a subsisting and valid obligation, if kept alive by any act or conduct of the parties sufficient for that purpose. And in determining the quality for sufficiency of such act or conduct, it must be remembered that the State is not a mere nominal party to the transaction. It is the obligee named in the bond, and by its own legislation has assumed the full duty and responsibility, in its representative position, of securing to the customers of Del Grego the protection which his surety has voluntarily assumed to give them against his possible default. Once it has approved the bond, and sanctioned the business of the banker, the State, acting on behalf of those whose pro-

tection is the underlying purpose of all the legislation involved, is an interested party in the most vital sense. This interest demands something more than a mental reservation on the part of the surety, something more, even, than an arrangement or agreement between principal and surety to terminate an obligation drawn as is this one for an indefinite term. Without the State's consent, either positively expressed through legislation or otherwise, and in the absence of a termination by the positive provisions of the instrument itself, the bond could not be terminated without sufficient notice to the obligee upon the approach of one of its annual periods for renewal.

In the absence of definite language terminating every bond then on file by the repeal of the previous Act, there seems no plausible reason to be urged for giving that effect to the Act of 1911, unless it appear in some claim that the new Act included stricter exactions or changed requirements not fairly contemplated by the surety when it assumed the obligation. It is of course true beyond controversy, that no subsequent legislation could enlarge, vary, or in any way modify the surety's obligation as expressed in the bond. *Ogden* v. *Saunders*, 25 U. S. (12 Wheat.) 213, 256. But that is not the situation, and the cases relied upon by the defendant are of no practical application. So far as any conceivable change in the surety's status is concerned, the differences in the two Acts are wholly negligible. Moreover, it was plainly the purpose of the Act of 1911 to recognize and continue in full force and effect all bonds then on file in accepted compliance with the earlier Act. Its very terms were notice to that effect to every individual or corporation then in contract relation of that sort with the State, and its express language lifts the whole embargo of its prohibitions from those who already "have deposited with

the state treasurer a bond of ten thousand dollars."
No language could be plainer, if it is to be construed
with intelligence, and no inference from its use can be
surer than that such previously deposited bonds were—
within the clear legislative meaning—living and con-
tinuing obligations unaffected by the passage of the
new Act. Nor is the plain import of this expression
weakened by the fact which the defendant emphasizes,
that it only repeats an identical provision of the Act
of 1907, where it could not have had the scope given
to it here, since there had been no previous requirement
for security of any character. It is of no consequence
that its field of operation was not the same in both
instances. The meaning and application of language
wholly free from ambiguity is obviously not dependent
upon such fortuitous considerations. So, too, there is
no such narrow significance as claimed for it by the
defendant in the language before quoted from the Act
of 1915 recognizing and accepting bonds already de-
posited "in accordance with the provisions of chapter
197 of the public acts of 1911." This does not mean
the imperative rejection of every bond deposited before
1911, but must of course be construed as inclusive of
all bonds of earlier date which the Act of 1911 had in
terms adopted as complying with its own exactions.

Since, therefore, the Act of 1911 did not of itself work
an extinguishment of the surety's obligation by a can-
cellation of the bond, the latter remained of valid and
binding force until terminated by the sufficient notice
to the State treasurer in September, 1917,—quite as
much for the protection of those who became the
banker's customers after the repeal of the Act of 1907
as of those whose names were in his books as such be-
fore that event. And this is so, regardless of the terms
of any private agreement between principal and surety
by virtue of which the indemnity was furnished. For

this reason, in the absence of knowledge and actual or constructive acquiescence in such an arrangement by the obligee, no such limited or qualified significance as is urged here by the defendant company is to be put upon its regular acceptance of premiums from Del Grego during the long period of years that followed the filing of the bond with the State treasurer. Such a private understanding can neither control nor in any way affect the measure of the surety's liability to the State as defined by the strict terms of the undertaking recited in the bond. Indeed, whether the premiums were paid, defaulted or refused, cannot of itself determine the extent of the surety's liability to the obligee or to the beneficiaries for whose interests the obligee stands.

The defendant urges, however, that the State treasurer is in any event without authority to bring or maintain this action. The basis for this claim is not altogether clear. If it rests, as it seems to, in part upon the proposition that no such authority existed until created by the Act of 1915, and that it cannot be construed to reach back to undertakings entered into before that date, the argument is not sound. It is quite true that in the absence of express legislation, none but the obligee of the bond may enforce it, but it was also quite within the power of the State to designate its appropriate officer to act in that capacity, and it in no sense operates as an impairment of contract rights or obligations then existing that this simplified machinery for their proper enforcement be made to apply to them. The provision for a definitely simple and certain method for insuring the adequate protection of the depositors by suit,—when such action becomes necessary or advisable,—can hardly be urged by the surety as an unfair curtailment or impairment of any contract right which it had before the remedial Act of 1915 brought the new provision into existence. Nor

is there force in the claim that this action is not of that plenary character which the situation in any event demands for the complete protection of all interests entitled to it. If this objection is intended to meet a hypothetical situation, possible under the construction which the plaintiff claims for the statute, it will be time to meet such a case when the occasion arises. Here, at least, the pleadings and the trial court's finding upon the issues submitted under them, make it clear that the fund, when reduced to the plaintiff's trust possession, is pledged to its proper destination and assured of proper administration and distribution among those entitled to share in it.

There was no error in the trial court's action in sustaining the demurrer to three of the Surety Company's four defenses. The substance of one of these defenses is disposed of by what we have already said. The bond was not terminated by the repeal of the Act of 1907, nor was the notification to Del Grego by the Surety Company in 1911 a cancellation of it. The defense which alleged a failure of the State bank commissioners to make the examination required by law of Del Grego's bank, was obviously insufficient. The real beneficiaries of the legislation whose chief if not sole purpose is their protection, cannot, while themselves wholly free from fault, suffer through the default or failure of some subordinate State agency. The third of these defenses relies upon the release of the surety because of the claimed default of the State treasurer to cancel Del Grego's license upon the repeal of the Act of 1907. For reasons already discussed or suggested, no such duty rested upon the treasurer.

The rulings upon evidence complained of disclose no error, and the material questions which the demurrer to the complaint raised are involved in what has been said.

The single remaining ground of appeal which calls for consideration is that which assigns error in the allowance of interest on the full penalty of the bond from the date of the bringing of the action. This was correct. While the question whether the obligee in a penal bond is ever entitled to interest upon the recoverable penalty, has not been free from controversy, the weight of authority in this country favors its allowance, and this view has been recognized by us. *American Surety Co.* v. *Pacific Surety Co.*, 81 Conn. 252, 259, 70 Atl. 584; *United States* v. *United States Fidelity & Guaranty Co.*, 236 U. S. 512, 530, 35 Sup. Ct. 298, and cases there cited. Obviously, therefore, the only theory upon which it could properly be refused here, is that the Surety Company could not know what portion of the full amount to which its undertaking rendered it liable, was needed to make good Del Grego's default, or to whom the surety might safely turn over the required portion of the penalty when its amount was ascertained. But even if there was fair ground for this assertion before suit was brought, none remained thereafter. Service of the complaint resolved any uncertainty on both points. When the State treasurer had qualified by bringing an action as the statute both empowered and directed him to do, no question remained as to his authority to receive whatever portion of the penalty was payable by the surety, and the complaint defined a situation which left no room for conjecture or doubt as to the amount of the forfeit. That was a matter of the simplest computation under the accepted modern doctrine that if the means for ascertaining the amount due, either by computation or otherwise, are accessible to the party to be charged, damages will not be regarded as unliquidated in the sense that interest will be withheld. *Gray* v. *Central R. Co.*, 157 N. Y. 483, 52 N. E. 555; *Tuzzeo* v. *American*

*Bonding Co.*, 226 N. Y. 171, 123 N. E. 142; *United States* v. *United States Fidelity & Guaranty Co.*, *supra.* The slightest inquiry must have verified the assertion that the full $10,000 for which the surety stood bound would still be less than enough to satisfy the claims of Del Grego's depositors, and that it was liable up to the full measure of its undertaking. With the subsequent proof of the material allegations of the complaint, interest became allowable as from the day they were brought definitely to the defendant company's knowledge. For here the question upon which the surety halted was not in fact one of uncertain or unliquidated amount, but the more radical one coming from its denial of any liability whatever and based upon what proved to be a mistaken view of its legal rights. This did not suspend the running of interest on a claim otherwise calling for immediate satisfaction, and subsequently fully established.

There is no error.

In this opinion the other judges concurred.