BATES & ROGERS CONST. CO. v. BOARD OF COM'RS OF CUYAHOGA
COUNTY, OHIO.

(District Court, N. D. Ohio, E. D.    July 16, 1920.)

No. 10275.

1. Bridges ☞20(4)—Failure to furnish and deliver site to contractor is a breach of promise, for which damages may be recovered.

A contract for the construction of approaches to a bridge carries with it an implied covenant to deliver the site in a condition to permit the work to be done, and a failure is a wrongful breach, for which the contractor may recover damages.

2. Bridges ☞20(4)—Where contract fixed no time for delivery of site to contractor, delivery must be within reasonable time.

Where a contract for the construction of bridge approaches required the work to be done within a specified time, but made no provision as to when the site for the work should be delivered to the contractor, the law implies that the site should be ready for delivery either on execution of the contract or within a reasonable time thereafter.

3. Contracts ☞296—Owner must be deemed to have warranted that plans and specifications were sufficient.

Where work was to be done according to plans and specifications on file, the owner, or the one engaging the work done, will be deemed to have warranted their sufficiency, and the contractor may recover, where they were changed and such change caused injury.

4. Bridges ☞20(4)—County liable to contractor, who is injured by failure to deliver site for work.

As full power is conferred upon county commissioners by Gen. Code Ohio, §§ 2333–2361, to contract for the construction of bridges, and as section 2408 authorizes the county commissioners to bring and defend suits involving injury to any roads, etc., the county is liable to a contractor injured by failure of the county authorities to deliver the site for the work within a reasonable time and by change in plans and specifications, notwithstanding section 2359 and related sections require a preliminary estimate of the cost of the entire work, and forbid the letting of the contract at a price exceeding such cost, and section 5660 requires a certificate of the county auditor that funds are in the treasury or in the process of collection sufficient to defray the expense, for, were any other rule followed, great confusion would result, and the latter sections must be deemed merely to describe conditions precedent to liability on a contract.

5. Bridges ☞20(4)—Prohibition against extra compensation will not prevent bridge contractor from recovering for breach of contract by county.

Although Const. art. 2, § 29, declares that no compensation shall be made to any public officer after the service shall have been rendered or the contract entered into, etc., a contractor who was to build approaches to a bridge may, in case of breach of contract by the county in delivering the site, etc., recover damages.

6. Pleading ☞216(2)—Only allegations of petition can be considered on demurrer.

Under Gen. Code Ohio, § 11333, the court, on demurrer to a petition, can consider only the allegations of the petition, and not exhibits attached thereto.

7. Bridges ☞20(4)—In case of failure to deliver site within time, contractor is not restricted to a mere extension of time for performance.

In case of failure of county authorities to deliver site to the contractor for work within time, the contractor is not restricted to an extension of time for performance, but may recover damages resulting, notwithstand-

ing the contract provided for liquidated daily damages in case of the contractor's failure to complete within the time specified.

8. Bridges ⬤═20(4)—**Provision allowing engineer to suspend work will not warrant discontinuance entirely for other reasons.**

A provision in a contract for the construction of bridge approaches, allowing the engineer to suspend work, must be deemed to relate to any part or portion, and not the whole work, and the act of the county in discontinuing the entire work for its own interest cannot be justified under such provision, so as to escape liability to the contractor who was thus injured.

9. Contracts ⬤═296—**Provision allowing change by engineer held not to contemplate substantial modification.**

A provision allowing the engineer to make alterations, to be paid for at the contract price, will not prevent the contractor from recovering for substantial modifications of the contract, which changed the entire work.

10. Bridges ⬤═20(4)—**Provision for payment on engineer's estimates will not preclude recovery for breach.**

A provision in a contract for bridge approaches for payment on estimates of the engineer will not preclude the contractor from recovering damages for a substantial breach of the contract, caused by failure to deliver the site within a reasonable time and a substantial change of specifications.

At Law. Action by the Bates & Rogers Construction Company against the Board of Commissioners of Cuyahoga County, Ohio. On demurrer to the petition. Demurrer overruled.

Squire, Sanders & Dempsey, of Cleveland, Ohio, for plaintiff.

Samuel Doerfler, County Prosecutor, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. This cause is before me on general demurrer of defendant to the first cause of action in plaintiff's petition. This cause of action is based on alleged breaches of a written contract for the construction of approaches to the Detroit-Superior bridge in the city of Cleveland, Ohio. The breaches complained of, and as a result of which plaintiff seeks to recover damages, are two: (1) That defendant failed in a reasonable time to deliver possession to the plaintiff of the sites upon which the approaches were to be constructed, as by its contract it was required to do. (2) That the plans and specifications for the work to be done which defendant was required to furnish, and which were on file at the time the contract was entered into, were during the progress of the work modified, changed, and altered, thereby causing great delay, to the damage of plaintiff. Defendant's main contentions are that for injuries of this character, no action can be maintained against the county commissioners of an Ohio county, and that, even if such an action may be maintained, the defendant is not liable for damages due to a delay caused by the wrongful neglect or default of the county commissioners.

No doubt is entertained by me that the contract required the defendant to deliver the site upon which the plaintiff was to do the work within at least a reasonable time, nor that the defendant was required to furnish completed plans and specifications whereby the contract work

might be done either at or before the time the plaintiff undertook to do the work, and that consequently, if defendant were a private corporation, plaintiff would have a right to recover such damages as resulted from the wrongful delays thereby occasioned, unless its right so to recover is prevented by other provisions of the contract, later to be noted.

[1] A few only of the important facts set forth in the petition need to be now stated. The work to be done consisted in the construction of subways and approaches to the bridge in question, with appropriate underground waiting stations, of reinforced concrete, so as to allow traffic access to the bridge at either end, and to permit the flow of pedestrian and vehicular traffic on an upper level, and street railway traffic on a lower level. These approaches were to be constructed in public highways, which were, at the time the contract was made, incumbered by buildings, lines of street railway, with poles and trolleys, lines of telephone and telegraph, and substructures, such as water mains, sewers, gas mains, and telephone and telegraph conduits. All these had to be removed before full possession of the site for the approaches could be delivered and the construction work could begin and progress. The petition alleges, and the fair interpretation of the contract is, that plaintiff was not obliged to remove any of these obstructions, but that all this work was to be done by the defendant. Time, it is alleged, was of the essence of the contract. The contractor was given 175 days after an order to start the work was given by the engineer within which to complete the work, and liquidated damages were imposed in the sum of $500 for the first day, and increased $25 for each additional day of delay beyond the 175 days allowed for completing the work. Plaintiff, it is alleged, was assured before entering into the contract that full possession of the east approach would be given December 1, 1916, with the right to proceed with the work before this formal order to start was given, and that full possession would be given of the west approach not later than March 1, 1917, as of which date the formal order to start work would be given, and the 175 days would begin to run from the last-named date. These respective dates, it is alleged, were in fact a reasonable time within which the defendant should remove all obstructions and deliver full possession.

[2] That an implied, if not express, covenant is contained in this contract, requiring defendant to furnish and deliver the site in a condition to permit the work to be done, and that a failure so to do is a wrongful breach of the contract for which the contractor may recover damages, is well settled by numerous cases. See Guerini Stone Co. v. Carlin Construction Co., 248 U. S. 334, 340, 39 Sup. Ct. 102, 63 L. Ed. 275; Mansfield v. N. Y. Central, etc., Co., 102 N. Y. 205, 6 N. E. 386; Blanchard v. Blackstone, 102 Mass. 343; Allamon v. Mayor of Albany, 43 Barb. (N. Y.) 33; King Bridge Co. v. St. Louis (C. C.) 43 Fed. 768, 10 L. R. A. 826. Assuming, without deciding, as is contended by the defendant, that the assurance given as to the date when possession of the site would be delivered cannot be proved, because, even though the written contract was silent with respect thereto, it must nevertheless control, then the law implies either that the site should be ready for

delivery upon execution of the contract or at least within a reasonable time thereafter. See same authorities, and Elliott on Contracts, § 3713. Plaintiff has elected to adopt the theory that, if the assurances given do not control, then the rule of a reasonable time should prevail, and alleges the respective dates at which defendant assured plaintiff the site would be delivered is a reasonable time. I shall dispose of the demurrer upon the rule adopted by plaintiff.

[3] That defendant was also required by its contract to furnish the necessary plans and specifications sufficient to permit the performance by plaintiff of its contract, either at the time the contract was entered into or within a reasonable time thereafter, and that the plans and specifications on file and made a part of the contract are warranted to be sufficient and adequate for that purpose, is equally well-settled law. See the authorities above cited. The written contract obliges the plaintiff to construct the approaches in conformity with specifications and plans now on file in the office of the engineer. Plaintiff alleges that, after the work had progressed to the level shown on these plans, certain of the plans were changed by defendant to meet certain new conditions and improvements not in contemplation of the parties at the time the contract was made, which changes required excavation to a greater depth and modification of design of certain parts of the work to be done, and thereby caused great delay in the completion of the entire contract.

Plaintiff further alleges that, had full possession of the sites been delivered as contemplated and as was required, and had not the changes and modifications been made in the plans and designs of the work, the plaintiff could and would have been able to complete the work as originally contemplated, by July 31, 1917; that in consequence of this failure to deliver possession until approximately four months later than the date when such possession should have been delivered, and of these changes and modifications in the plans and specifications, plaintiff was so delayed that it was not able to complete the work until October 30, 1918, and that plaintiff was, as a result of these delays, obliged to do the work during two winter seasons, under adverse weather conditions, at great disadvantage, and during a period of time when, owing to war conditions, there was a shortage of labor, and wages and prices of material were constantly and rapidly rising. This increased cost and expense, it is alleged, amounts to $199,000.

As already said, upon the principles and authorities above noted, a good cause of action, it seems to me, is thereby stated, if defendant is subject to the same legal responsibilities under its contract as is a private corporation. Defendant's contention that it is not so liable, and that, on the other hand, no legal right exists to sue a county in this situation, and even that, if it may be sued, it is not responsible for damages arising by reason of delays thus caused, is not, in my opinion, sustainable. All the cases cited in support of this contention have been given due consideration, and do not, it seems to me, when rightly understood, support it.

[4] Full power to contract for the construction of bridges is conferred upon county commissioners by certain provisions of the Ohio statutes. General Code, §§ 2333–2361. True, certain formal requirements are provided, such as preparation of plans and specifications, the previous making of an estimate of the cost of the work to be done, the letting of the contract to the lowest bidder after due advertising, approval by the prosecuting attorney, etc.; but the petition alleges, and so far as appears, all these conditions precedent to the making and entering into a valid and binding contract were complied with. I am not overlooking defendant's contention that the damages which plaintiff seeks to recover are outside and in excess of the estimates thus made, and are not within the express language of these sections, and shall make some observations later on with respect thereto. For the present, the point I wish to emphasize is that full authority is conferred by law on county commissioners to make the contract sued on, and that the statutory requirements in so doing, it is averred, were complied with. This being so, no doubt exists that county commissioners may be sued to enforce any liability created thereby in favor of the other contracting party, and that the language of section 2408, G. C., authorizing the county commissioners to bring, maintain, and defend all suits at law or in equity involving injury to any public, state, or county road, bridge, ditch, drain, or water course, and for certain other specific purposes, is not to be taken as a limitation, either on the right to sue or the liability to be sued, respecting contracts lawfully made.

This proposition has often been held and decided in Ohio, and the general rule is that the capacity to sue and to be sued, and to prosecute and defend all suits in law or in equity, is commensurate with the official powers and duties of county commissioners, and embraces all causes of action arising out of the duties and powers vested in them by law. The net result of these several decisions is, in my opinion, correctly summed up in Commissioners v. Ziegelhofer, 38 Ohio St. 523, 529, in these words:

"Here the claim is founded upon contract, and grows out of the corporate liability of the county for the official acts of the board of county commissioners. In this respect, the rights of persons contracting with the commissioners, and the liability of the county on their contracts, are of the same nature as the corporate liability of private corporations. In either case, the capacity to contract is derived from the statute, but the liability to others arises from the acts of those authorized to bind the corporate body."

See, also, the following: Shanklin v. Commissioners of Madison County, 21 Ohio St. 575; 582, 583; Commissioner v. Noyes, 35 Ohio St. 201, 206, 207; State ex rel. Jewett v. Sayre, 91 Ohio St. 85, 109 N. E. 636; Paine v. Portage County, Wright (Ohio) 417; Kinney v. Commissioners, 8 Ohio Cir. Ct. R. 433; McLean v. Hamilton County, Fed. Cas. No. 8881.

In State ex rel. Jewett v. Sayre, it is in effect held that county commissioners are liable in damages for the breach of an express or implied covenant in a road construction contract, and that they may

compromise and adjust that liability and order its payment from public funds. In McLean v. Hamilton County, both contentions now made by defendant were there made, and it is held that a contractor might sue and recover against county commissioners of an Ohio county damages due to a wrongful breach of a construction contract.

Defendant cites and relies upon the following authorities: Commissioners of Hamilton County v. Mighels, 7 Ohio St. 110; Grimwood v. Commissioners, 23 Ohio St. 600; Finch v. Board, 30 Ohio St. 37, 27 Am. Rep. 414; Board v. Volk, 72 Ohio St. 469, 74 N. E. 646; Board v. Storage Co., 75 Ohio St. 244, 79 N. E. 237; Commissioner v. Gates, 83 Ohio St. 19, 93 N. E. 255. All of these cases are of the same general character and involve the same legal principles as Commissioners of Hamilton County v. Mighels. In this case it was held that a county is not liable in an action for damages due to the negligence of its commissioners in the maintenance of a public building whereby a person lawfully therein sustained personal injuries. However, in the opinion, at page 116, it is recognized that a county would be liable for damages growing out of a wrongful breach of a contract lawfully entered into. It will also be noted in passing that the authority of the other cases is somewhat shaken by the recent decision of the Ohio Supreme Court in Fowler v. City of Cleveland, 100 Ohio St. 158, 126 N. E. 72, 9 A. L. R. 131, particularly in consequence of the reasoning upon which the judgment therein rests. See 100 Ohio St. 175, 126 N. E. 72, 9 A. L. R. 131; Ohio Law Reporter, March 15, 1920.

Defendant further alleges in support of its contention that, if a recovery is here permitted, sections 2359 and 5660, G. C., will be violated, and that therefore no cause of action is stated, because to allow a recovery would be to violate these sections. Section 2359, G. C., and related sections, require a preliminary estimate of the cost of the entire work to be made, and forbid the letting of a contract at a price in excess of that estimate. Section 5660 requires a certificate of the county auditor that funds are in the treasury or in process of collection, not appropriated for any other purpose, sufficient to meet the liability created by the contract. It is urged that these provisions of the law evidence a fixed purpose to limit the liability of a contract lawfully entered into, so that no burden can be placed upon the taxpayers in excess of the preliminary estimate or of the amount so certified, and that no action can be maintained to recover any sum which may be in excess thereof. Upon principle and sound reasoning it does not seem to me that this can be the force and effect of these sections. Undoubtedly it is the law that no recovery can be had upon a contract entered into in violation of the provisions of section 2359 and related sections, nor in violation of section 5660 in cases to which that section is applicable.

But this is a different proposition from saying that no recovery can be had upon a contract entered into in conformity to these sections, which is afterwards wrongfully breached by the county commissioners, even though the damages thereby sustained are not included as a part of the estimate, or if added to expenditures previously made on account of the contract may be in excess of the estimate or of the certificate.

These sections at most prescribe certain mandatory conditions precedent to the exercise by county commissioners of the power to contract; but when these conditions have in good faith been met and complied with, as is averred in the petition, then upon principle it would seem that the liability of both contracting parties becomes and thereafter remains the same as exists between private contracting parties; otherwise, if, peradventure, the public authorities had in good faith miscalculated the cost of performing a public work upon unit prices, the contract must be regarded as annulled and the contractor exonerated from further liability, whenever it appears that the preliminary estimate and certificate would be exceeded. A construction of these sections which would produce these absurd and inconvenient consequences ought not to be adopted, unless such is the only permissible construction of the language used, or unless impelled so to do by controlling decisions of the court of last resort of the state of Ohio.

[5] It does not seem to me that this construction is required by the decisions. Buchanan Bridge Co. v. Campbell, 60 Ohio St. 406, 54 N. E. 372, and kindred cases, merely hold that no action can be maintained if a contract has been originally entered into in violation of these mandatory conditions precedent. Section 29, art. 2, of the Constitution of Ohio, seems to me to be without pertinency. Carthage v. Dickmeier, 79 Ohio St. 323, 87 N. E. 178, at first reading, may seem to forbid a recovery of any amount in excess of the certificate; but I do not find that this case has ever been followed or approved, and should, in cases where a certificate is required, be confined to the special facts of that case. On the other hand, this bridge, as appears from the petition, was to be wholly constructed from the proceeds of bond issues lawfully authorized by a vote of the electors, and, with respect to contracts thus to be paid for, it is settled law in Ohio that the auditor's certificate is not an essential condition to a valid and binding contract. See Comstock v. Nelsonville, 61 Ohio St. 288, 56 N. E. 15; Emmert v. Elyria, 74 Ohio St. 185, 78 N. E. 269; Akron v. Dobson, 81 Ohio St. 66, 90 N. E. 123; also inferior court decisions in note to section 3806, G. C. True, all these cases relate to contracts made by municipalities; but section 5660 is in the same language as section 3806 and kindred sections, and was a later enactment of the provisions of the Burns Law originally applicable alone to municipalities. The same construction should on familiar principles be applied to both.

[6] Certain additional contentions are made, depending on the phraseology and construction of certain provisions of the written contract sued on. This contract and its provisions, except as pleaded in the petition, are not properly before me, nor subject to examination in passing on this demurrer, notwithstanding a copy of the contract is attached to and made a part of the petition. The sufficiency of the petition must be judged by its allegations, and not by exhibits attached thereto. See section 11333, G. C.; Larimore v. Wells, 29 Ohio St. 13. However, as counsel for both parties orally and by briefs have discussed these questions, it is not, perhaps, exceeding my duty to express briefly my opinion thereon.

[7] Defendant contends that, inasmuch as the 175 days' time was to run only from the giving of the formal order to start work, and that no time was fixed for the giving of this notice, the plaintiff's sole remedy for a failure to deliver possession of the site, or to give the notice within a reasonable time, is by an extension of the period within which performance was required. This proposition has already been sufficiently discussed. Nothing appears in the contract tending to support the view that the defendant might delay giving this notice, any more than delay delivery of possession of the site beyond a reasonable time.

[8] Defendant further urges that, inasmuch as paragraph 8 gives the engineer authority to suspend or discontinue work, and provides that no damages to the contractor by reason of delay incident thereto will be allowed, but that a corresponding extension of the time for completion of the contract will be given, plaintiff's right and remedy is limited exclusively to an extension of time. This does not seem to me to be the proper construction of this provision. The suspension permitted relates to any part or portion of the work, not to the entire work. The suspension is permitted only whenever, in the opinion of the engineer, the best interests of the county or the progress of the work, upon other parts or portions of the work, may demand it. This obviously does not contemplate a right in the defendant to discontinue entirely, and prevent or delay performance of the contract during any substantial period of time. Manifestly, when time is made the essence of the contract, and the contractor is required to complete it within a fixed period, he acquires an equal right to complete it during that period, and no construction of isolated paragraphs can be indulged or permitted which would destroy the essence of the contract and deprive it of its mutuality.

[9] Defendant further contends that, inasmuch as paragraphs 16 and 17 permit the engineer to make alterations in the lines, grade, plans, form, position, dimensions, or material of the work during the progress or performance, or may order any portion of the work to be left out, and that the increased amount of such work shall be paid for at the prices established by the contract, and that no damages shall be allowed because of any diminution in the quantity of the work to be done, that therefore such changes and modifications as the petition alleges were made are permitted by the terms of the contract itself, and the remedy of the plaintiff is limited to that given by section 16. This also seems to me an untenable position. The contract must be construed as a whole, and its essential provisions should not be destroyed. The right and obligation is to perform the work in strict conformity to the specifications and general plans on file and such detail plans and directions as may be issued by the engineer during the construction of the work. The right to make alterations in lines, grades, plans, etc., has a more obvious relation to these detail plans and directions, so as to permit the work to be done in substantial conformity to the general plans and specifications, and not justify or warrant such substantial changes in these general plans as destroys the subject-matter of the contract or

produces a substantial breach of it. Nor do these provisions deprive the plaintiff of his right to recover damages for a substantial breach of the contract, due to substantial change or modification of the general plans and specifications. The contractor may, it is true, either because of the failure to deliver the site within a reasonable time or because of substantial changes in the general plan or design, which would unreasonably delay the work or substantially change the subject-matter of the contract, refuse to perform further, abandon the contract, and recover damages. He may, however, elect to proceed, notwithstanding his right to abandon, and, if he does, he is not held to waive his right to recover damages. See Guerini Stone Co. v. Carlin Construction Co., 248 U. S. 334, 39 Sup. Ct. 102, 63 L. Ed. 275; Marsfield v. N. Y. Central, etc., Co., 102 N. Y. 205, 6 N. E. 386; United States v. Mueller, 113 U. S. 153, 5 Sup. Ct. 380, 28 L. Ed. 946; Bush v. Trustees, 2 Hudson on Building Contracts, 122.

[10] Likewise the provisions of paragraphs 18, 25, 37, and 38, relating to the power and duty of the engineer in making estimates and measurements, and in determining the quantity and quality of the work, and in making a final estimate which shall include all work of every description, and material furnished under the contract, and providing that payment of the final estimate shall release the county from any and all claims of liability on account of work performed under said contract, or any alterations thereof, it cannot be said, preclude the contractor from maintaining an action for a wrongful breach of the character herein alleged, provided, of course, he can sustain by evidence the allegations of his petition. These provisions have to deal with the performance by the engineer of his duties under the contract. The cause of action is based upon alleged breaches of the contract, with respect to which the engineer is given no power to make a decision, and is not called on to perform any duty.

For the foregoing reasons, I am of opinion that plaintiff's first cause of action is in law sufficient, and that the demurrer thereto should be and is overruled. An exception may be noted.

⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes