THE KRALL COAL COMPANY *v.* THE CENTURY INDEMNITY COMPANY

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Submitted on briefs March 4—decided March 31, 1953

*T. Holmes Bracken,* on the brief for the appellant (defendant).

*George W. Crawford,* on the brief for the appellee (plaintiff).

INGLIS, J. This is an action on two contract performance bonds issued by the defendant to secure the performance by the Peirce Oil Corporation, hereinafter referred to as Peirce, of its contracts to deliver oil to the plaintiff. The principal question in the case is how much of the oil contracted for was delivered before Peirce broke the contracts. This turns on the question whether, under the contracts, deliveries of oil treated by Peirce and the plaintiff as made pursuant to other unbonded contracts between them should be considered deliveries made under the bonded contracts. The case was referred to a state referee. The remonstrance to his report was overruled and the trial court rendered judgment for the plaintiff for the full amount claimed.

The finding of facts reported by the referee is supported by the evidence, is adequate to present the claims of law made by the defendant, and should not be modified in any material particular as requested by the defendant in its remonstrance. The portions of the remonstrance which sought modification of the report and a recommittal of the case to the referee were properly overruled. The facts found, in so far as they are essential to a decision of the questions of law involved in the case, are as follows: On June 11, 1948, the plaintiff entered into a written contract with Peirce whereby it purchased from the latter 300,000 gallons of No. 5 fuel oil and paid the full purchase price thereof, $28,215. On July 19, 1948, the same parties entered into another written contract whereby the plaintiff purchased 300,000 gallons of No. 2 fuel oil and paid the full purchase price of $31,185. Each of these contracts provided that the oil should be "delivered to Buyer in his tank trucks, without further cost or expense to Buyer for handling or storage, at such times and in such quantities

as the same be required by the Buyer, F. O. B. the Seller's storage tanks located at 140 River Street, New Haven, Conn." Contemporaneously with the execution of these contracts, the defendant issued performance bonds in the amounts paid by the plaintiff under the contracts. These bonds guaranteed to the plaintiff the full performance by Peirce of the respective contracts within one year. These are the bonds which are in suit.

In addition to the contracts already referred to, the plaintiff had other contracts with Peirce for the delivery of both No. 5 and No. 2 fuel oil. The full purchase price of the oil to be delivered under these contracts was also paid in advance. On June 11, when the 300,000 gallons of No. 5 fuel oil were purchased, Peirce was holding for the plaintiff 12,563 gallons of that grade of oil. On June 28, the plaintiff purchased 50,000 gallons of the same grade. As for No. 2 fuel oil, 300,000 gallons of which were purchased on July 19, the plaintiff on June 23 had made a purchase of 50,000 gallons. These additional purchases were evidenced by invoices which set forth substantially the same provisions concerning delivery as those contained in the 300,000 gallon contracts, that is, that deliveries would be made as required by the plaintiff. None of these contracts other than the two for 300,000 gallons was bonded, and it was understood between the plaintiff and Peirce that the oil called for by the unbonded contracts should be delivered before the oil sold under the bonded contracts.

By the middle of November, 1948, all the fuel oil of both grades purchased under the unbonded contracts was delivered. Between then and January 13, 1949, deliveries were made under the bonded contracts to such an extent that on the latter date there

remained undelivered 204,607 gallons of No. 5 oil and 185,969 gallons of No. 2 oil. The price which the plaintiff had paid for this undelivered oil totaled $38,574.77. On January 19, Peirce was adjudicated a bankrupt and thereafter no oil was delivered.

Upon the report of the state referee judgment was rendered for the plaintiff in the amount of $36,716.68. This amount was arrived at by deducting from the price of the undelivered oil the amount of two dividends received by the plaintiff from the bankrupt estate and adding interest on the unpaid balances from January 19, 1949.

The defendant takes the position that the judgment is not supported by the report of the referee, because, it says, the contracts which were bonded by it required that all deliveries of No. 5 and No. 2 fuel oil made after the respective dates of the contracts be credited upon the gallonage called for by those contracts and not upon the gallonage under the unbonded contracts. If this were done, the price of the undelivered oil would be $25,093.72 instead of $38,574.77. The defendant makes the further claim that the plaintiff and Peirce, by arriving at the understanding that all oil under the unbonded contracts should be delivered before deliveries under the bonded contracts began, modified the latter contracts so substantially that all obligation of the defendant as surety for those contracts was terminated. The answer to both of these claims is to be found in the proper interpretation of the bonded contracts.

The crucial provision of the contracts is that the oil shall be "delivered to Buyer in his tank trucks ... at such times and in such quantities as the same be required." The defendant contends that this means that deliveries were to be made from time to time of such oil as the plaintiff needed for the conduct

of its business. To arrive at this interpretation, it would be necessary to read something into the contracts which is not there. It would be necessary to add after the word "required" the phrase "to supply its customers" or some equivalent phrase.

It is to be noted that these contracts are not ones in which the total amount of merchandise agreed to be purchased and to be delivered is measured by the needs of the purchaser. That was the nature of the contracts involved in *W. H. Purcell Co.* v. *Sage,* 200 Ill. 342, 346, 65 N.E. 723, *Mueller* v. *United States,* 19 Ct. Cl. 581, 591, aff'd, 113 U.S. 153, 5 S.Ct. 380, 28 L. Ed. 946, and *McKeever, Cook & Co.* v. *Canonsburg Iron Co.,* 138 Pa. 184, 188, 16 A. 97, relied upon by the defendant. In each of the present contracts the total amount of oil sold is fixed at 300,000 gallons, no more, no less. Consequently, there was no reason to make the times or quantities of the deliveries dependent upon the needs of the plaintiff. The theory behind the contract provisions in question was that the plaintiff had paid Peirce in full for the oil which was to be delivered; Peirce was to store it for the plaintiff free of charge; but, having paid for it, the plaintiff was entitled to demand delivery at any time it wished. Clearly, therefore, the word "required" was used not in the sense of needed but in its more common usage of asked or demanded. Webster's New International Dictionary (2d Ed.); 77 C.J.S. 271; see *Hull* v. *Holloway,* 58 Conn. 210, 216, 20 A. 445. The true interpretation of the clauses is that under each contract deliveries of oil should be made at such times and in such quantities as should be demanded by the plaintiff.

It follows that the plaintiff had the right to demand deliveries under the contracts bonded by the defendant at any time it chose. If it chose to apply

the oil first delivered on account of the oil called for by the unbonded contracts and to postpone its demands under the bonded contracts, it had the right so to do. *Hudson Trust Co.* v. *Cushman,* 93 Conn. 119, 121, 105 A. 344; *Sagal* v. *Mann,* 89 Conn. 576, 581, 95 A. 6. Consequently, the claim of the defendant that it should be credited with deliveries made to the plaintiff under other contracts is without merit. It is entitled to credit for only those deliveries made pursuant to the demands of the plaintiff made under the bonded contracts. That credit it has received.

Nor is there basis for the claim of the defendant that it was relieved of its obligation as a surety by reason of the fact that the plaintiff and Peirce modified the bonded contracts when they arrived at the understanding that the earlier deliveries of oil should be treated as deliveries under the unbonded contracts. The fact that such an understanding existed and that the parties kept their records of deliveries in accordance with it is relevant because of the well-established principle that the practical construction put upon a contract by the parties in their operation under it is an aid to the proper interpretation of it. The understanding between the parties to the contracts in question was not a separate contract for the modification of those contracts. See *Camp* v. *Waring,* 25 Conn. 520, 529. It was the interpretation placed upon the contracts by the parties and, as already pointed out, it was the correct interpretation. It, therefore, did not release the surety. *New Haven* v. *National Steam Economizer Co.,* 79 Conn. 482, 488, 65 A. 959.

When the hearing before the state referee was nearly ended the defendant moved the court for leave to file a substitute answer. It has assigned the denial of its motion as error. The only substantial change

incorporated in the substitute answer proffered was the addition of a third special defense alleging that the parties to the bonded contracts had modified those contracts and that the contracts which were made the basis of the suit were different from the written contracts which were alleged in the complaint. The decision of the question whether the allowance of an amendment of pleadings will unduly delay the reaching of an issue or a trial rests in the sound discretion of the court. Any amendment the allowance of which will cause such delay may properly be denied. *Cook* v. *Lawlor,* 139 Conn. 68, 71, 90 A.2d 164. We cannot say that the denial of the motion, made as it was when the trial was nearly over, was an abuse of discretion. In any event the defendant was not harmed by the denial of the motion. The issue attempted to be raised by the amendment was treated by the parties as though it were properly raised by the pleadings. The referee found the facts relevant to it, and the decision of the trial court that those facts did not make out a good defense was, as has already been pointed out, correct.

Finally, the defendant contends that the court erred in including in the amount of the judgment the item of interest. In this it is partially correct. Interest was allowed from the date of Peirce's bankruptcy, January 19, 1949. The report of the referee contains no finding either that the plaintiff ever made a demand upon Peirce for a delivery of any of the undelivered oil or that, prior to the institution of the action, it brought definitely to the defendant's attention the fact that Peirce had defaulted on its contracts. Interest on the principal amount found due under a penal bond is allowable, but only from the time when the fact that such amount is due is brought definitely to the surety's knowledge. *Gil-*

*patric* v. *National Surety Co.,* 95 Conn. 10, 25, 110 A. 545; *American Surety Co.* v. *Pacific Surety Co.,* 81 Conn. 252, 259, 70 A. 584; *Olmsted* v. *Olmsted,* 38 Conn. 309, 324. The institution of an action upon the bond does, of course, impart that knowledge. *Gilpatric* v. *National Surety Co.,* supra. In the present case, therefore, the interest to be included in the amount of the judgment should have been computed on the principal amount found due and the unpaid balances thereof only from the date upon which the action was commenced.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff in accordance with this opinion.

In this opinion the other judges concurred.