Moss, Judge,
delivered the opinion of the court:
On April 9,1919, plaintiff entered into a contract with the United States by which it agreed to furnish the labor and certain portions of the material for the repair of the S. S. El Sol, in accordance with specifications attached to and made a part of same, for which plaintiff was to receive $121,500. The work was to be completed on or before May *667 10, 1919. On May 7, 1919, the parties agreed, by a supplemental contract, that plaintiff should receive $2,000 less than the amount stipulated in the contract, in consideration for which plaintiff was to be paid from time to time, as the work progressed, instead of one payment on the completion thereof. By another agreement of date May 9, 1919, the time limit for the completion of the contract was extended five days, or to May 15, 1919. A further supplemental contract was entered into between the parties on May 10, 1919, whereby plaintiff undertook to furnish material and labor for certain other work on said vessel at a total cost of $8,760. On June 4, 1919, the entire contract was completed, and the vessel was delivered to the Government. The sum of $20,000 was retained by defendant as liquidated damages under a provision of the contract for the deduction from payments to plaintiff of $1,000 per day for each day’s delay beyond the date fixed for the completion of the contract. After an inspection of plaintiff’s piers, the officer in charge for the Government directed that the work be done at said piers. On May 7, 1919, while the work was in progress, the vessel was removed by order of defendant to a Government pier.
Plaintiff is suing for the recovery of the $20,000 deducted as liquidated damages and for the $85,718.93 as additional cost of plaintiff occasioned by delays by the Government and by the removal of the vessel to the Government pier.
The contract provided that certain materials were to be furnished by the defendant and installed by plaintiff. The Government failed to provide these materials as they were required. There were fifty-six other vessels under process of reconditioning at the same time. The work in progress involved the expenditure of millions of dollars, and the demand for materials was greater than the supply. All these vessels were intended for service as troop transports for the returning soldiers, and preference was being given to the work on the larger vessels. Under the contract the Government was to furnish and stow the ballast, which consisted of steel rails and billets. It was a difficult and dangerous operation. Much of the work under the original contract could not be begun until after the stowage of the ballast, which should have been completed within a week *668 after the beginning of the work. It was actually delivered and stowed between May 10 and May 22. The evidence shows beyond question that the delay in the completion of this work was occasioned by the Government, and was in no sense the fault of plaintiff.
On the question of plaintiff’s claim growing out of the removal of the vessel from plaintiff’s pier, the evidence shows that plaintiff had a well-equipped plant which occupied a yard area of about eight acres. It had two» piers, one of which was sixty feet wide and four hundred feet long, and the other, one hundred feet wide and three hundred feet long. There were four dry docks with a capacity of ten thousand to fifteen thousand tons. It had wood shops, machine shops, a boiler shop, and a large stock of material. It contained a waterworks system, power plant, compressed-air plant, a system of lights, and every essential facility and equipment for the convenient and economical prosecution of the work on which plaintiff was engaged. Defendant contends that plaintiff’s pier was insecure and, in certain particulars, in a state of partial decay; that it lacked suitable bits, or cleats, for fastening the ropes to hold the vessel, which made it necessary to pass the ropes over and around the stringers; that with the additional weight of the ballast, which at that time had not been loaded, there was insufficient water to keep the vessel afloat; that the vessel extended beyond the pier into the river to the extent of thirty or forty feet, so that passing boats were liable to come in contact with it. It should be remembered that the Government’s officer in charge made a personal' inspection of plaintiff’s pier, and selected it as a suitable and proper place for the performance of the work.
The condition on May 7, when the vessel was removed, had not been changed in any particular. The Government pier was about fifteen feet wide and had a standard railroad track down the center and was therefore accessible only at the shore end of the pier. There was no place for the storage of raw material, which made it necessary to transport same by boat or truck in small lots, from day to day, and as it was used. Plaintiff’s workmen, under their contract *669 of employment, continued to report for duty at plaintiff’s pier, and it was necessary to transport them from that point to the Government pier. In addition to the increased daily expenditures occasioned by the move, plaintiff was compelled to provide, at a substantial expense, facilities for the performance of the work.
The evidence fails to sustain defendant’s contention that plaintiff’s pier was unsuitable or insecure. The S. S. Oriente, C-941, and the S. S. Amplvion, C-97I, involved in separate actions, were being repaired at the same time and place. One of these vessels, when delivered, was lying a few feet outside the pier. It was later properly pláced so that it would not project beyond the pier. The El Sol at low tide was aground to the extent of a few feet, but was entirely afloat at half tide. The loading of the ballast, which weighed 250 tons, would have increased the draft 5.9 inches. This was not an uncommon situation and presented no serious difficulties. The complaint that the vessels were attached to the pier by lines passing over and around the stringers is equally without merit. The method employed in securing the vessels is immaterial. They were, in fact, securely fastened and that was the important requirement. The situation at plaintiff’s pier was not such as to justify the removal of the vessel, and the Government is liable for any additional cost occasioned thereby.
Defendant takes the position that plajntiff accepted, without protest, the final payment, which was the remainder due plaintiff on completion and delivery of the vessel, less the deduction of $20,000 for liquidated damages. This contention is not borne out by the record. While the question of the deduction of the $20,000 was in the hands of the Auditor for the War Department for adjustment, plaintiff was advised that the Government would pay $5,000 on account of money which had been withheld on El Sol, and $5,000 on El Oriente, whereupon on August 6, 1919, plaintiff forwarded two vouchers to defendant for $5,000 each, stating, however, that the amount would be accepted under protest and without prejudice to further claim for the amount which had been deducted. When this sum was later *670 received by plaintiff, there was no necessity for a renewal of the protest theretofore registered. But if there had been no formal protest, the mere acceptance of a smaller sum than the full amount claimed would not estop plaintiff from prosecuting its claim for the full amount. Lancaster et al. v. United States, 57 C. Cls. 284.
Plaintiff is entitled to recover the sum of $39,089.22, and it is so adjudged and ordered.
GREEN, Judge; Graham, Judge; and Booth, Chief Justice, concur.