*441 MEMOSANDUM BT THE COURT
Littleton, Judge.
When applied to the facts in this case :the written contract between the plaintiff and the Govern:ment precludes the entry of judgment by the court in plaintiff’s favor on any of the items making up its claim, and the • question whether plaintiff should be compensated for all or .any portion of the extra expense arising from the conditions disclosed by the findings, by reason of the delay in progress of the work caused by the Government and the extra work ■ which plaintiff was required by the Government’s authorized representative to perform, is for the Congress to decide. The facts hereinbefore set forth, with this memorandum, will therefore be certified to Congress in accordance with section 151 of the Judicial Code, which provides with refer- - ence to a case of this character that the court “ * * * shall proceed with the same in accordance with such rules as it may adopt and report to such House the facts in the ■case and the amount, where the same can be liquidated, * * * together with such conclusions as shall be suffi- • cient to inform Congress of the nature and character of the demand, either as a claim, legal or equitable, or as a gratuity .against the United States * *
The facts established by the evidence, and set forth herein, 'together with this memorandum and our conclusions with respect to the various items, will be certified to the Senate in accordance with Senate Besolution 326 referring to this court Senate bill 2588 for the refief of plaintiff in the premises.
Before discussing the merits of the various items making up the claim from the standpoint whether the plaintiff, in '..the circumstances, ought to be compensated ■ therefor in *442 whole or in part, notwithstanding the fact that under the written contract it had no cause of action against the Government and is not entitled, as a matter of law, to a judgment of the court, we will point out wherein the contract, precludes such recovery in this court. The contract between the plaintiff and the Government under which the-work of remodeling the Public Health Service Hospital was ■■ performed, and out of which the items involved in this pro- • ceeding arose, gives the plaintiff no claim, legal or equitable,. upon which this court can render judgment, because, first, the contract precluded suit to recover damages arising out of any delays caused by the United States, and, second, it: precluded suit to recover compensation for extra material or extra work unless the same was directed in writing; and,, third, the court is without jurisdiction to enter judgment in respect of any of the items in question because the contract made the decision of the Surgeon General final. Carroll et al. v. United States, 76 C.Cls. 103. The matter of reimbursement to the plaintiff with respect to any of the items involved, therefore, is in the discretion of the Congress.
Plaintiff performed a-11 the work required by it under the-contract strictly in accordance with the terms .thereof except that the work was not completed within ninety days after-notice of acceptance of the bond furnished by plaintiff under-the contract, and to the satisfaction of the Government, but: the delay in completing the work within the time specified as ■ a matter of fact was caused almost entirely by the Government in slowing down the progress of the work by occupancy of the building before it was completed, in ordering-changes and extra work and requiring and compelling plaintiff to execute the same without a written order and without. compensation, in failing to furnish articles of equipment and supplies called for by the contract when they were needed,, and in requiring plaintiff in some cases to furnish equipment and material at its own expense which the contract required the Government to supply, all of which resulted in additional expense for materials, labor, and overhead, and caused the work to extend beyond the date when there was-ah increase in cost of labor and when it could and would, have otherwise been completed.
*443 Upon completion of the work plaintiff made its claim herein presented to the Surgeon General, who was the official designated by the contract to pass upon such matters, and it was wholly denied on the ground that plaintiff had not obtained written orders for the extra work in connection with which the claim was made and on the further ground that the Government was not required to compensate the plaintiff for any delays caused by the Government. The specifications made a part of the contract provided, in specification 20, that “ no claim shall be made or allowed to the contractor for any damages which may arise out of any delay caused by the United States”; and, further, in specification 35, that “no claim for compensation for extra materials or work is to be made or allowed unless the same be specifically agreed upon in writing, or directed in writing.” The Surgeon General also refused to approve any allowance on the further ground that specification 31 provided that “ the Department reserves the right to make any additions to, or omissions from, or changes in, or substitutions for, the work or material called for by the drawings and specifications, * * *. If * * * no agreement can be reached by the Surgeon General and the contractor as to the reasonable value of the work then the Surgeon General is to have the right to fix the value of such additions, omissions, or changes, and no claim for damages on account of such change or for anticipated profits shall be allowed.” Specification 14 provided that “ the decision of the Surgeon General as to the proper interpretation of the drawings and specifications shall be final.”
Had the Government given plaintiff written directions to perform the various items of work involved in plaintiff’s claim it would have been entitled under the contract and specifications to compensation for the additional cost and expenses with respect to a number of the items involved, and the Department under the contract would have been authorized to make payment therefor. And it seems to us under the facts disclosed that at least a number of the items involved constituted extra work under the contract and that, as a matter of justice to plaintiff, written directions should have been given as requested by plaintiff at the time. In some instances not involved in this claim written direc *444 tions were given with respect to certain items of work and extra payments, in addition to the contract price, were made to plaintiff in the total amount of $10,011.94. Those items do not enter into plaintiff’s claim and do not affect the merits thereof. While plaintiff did not perform the work and incur the expense involved in the items of its claim under duress from a legal standpoint, it was required and compelled to do so at the direction of the Government’s authorized representative under threat that if the work demanded was not performed in the manner specified payments due plaintiff and those to be made under the contract for other work would be withheld until such extra work was performed as directed.
The conditions affecting plaintiff’s capital were such that if the payments provided in the contract to be made as the work progressed were not received it would be unable to proceed with completion of the work called for by the contract. This fact was known to the Government’s representative and he used it as a means of compelling plaintiff to carry out the demands for extra work and the performance of work requiring additional costs, due to errors of the Government and in the plans supplied by it. In some instances when the extra work involved in making up plaintiff’s claim was required by the Government, plaintiff was advised and led to believe that the matter would be adjusted and compensation made therefor later. This, however, was not done. At the completion of work in 1921, when plaintiff made its claim for extra compensation and requested the Government not to impose upon it any penalty for delay in completing the work within the time specified because such delays had been due to causes over which plaintiff had no control and had been caused chiefly by the Government, the Government acceded to plaintiff’s claim with respect to the penalty and none was imposed. All claims for reimbursement of its losses, however, were denied, and in connection with the whole matter it was stated to the Surgeon General by the Government’s authorized officer who had at all times been in charge of the work that “ On the other hand, the Government was particularly fortunate in obtaining a contract at all, and it is confidentially stated that the trans *445 action lias resulted in a saving of not less than $40,000 to the Government.”
The evidence establishes to our satisfaction that, based upon the amount which was paid by the Government under the contract and the value of the work actually performed by plaintiff, including the items involved in this claim, this statement made at the conclusion of the work by the official of the Government who was present at all times during the progress of the work and who had supervision thereof, as the representative of the Surgeon General, was substantially correct.
The first item in plaintiff’s claim concerns the matter of reimbursement for its additional expense for a delay of eleven working days caused by the Government due to its failure to give plaintiff possession of the building upon delivery of the notice of acceptance of the bond on March 1, 1920, which caused the work under the contract to extend beyond May 10, 1920, when there was a general increase in labor costs, causing plaintiff additional expense, including overhead for this period, of $524. Although the contract provided that the Government would not be responsible for any damages arising out of any delay caused by it, this was an actual expense of plaintiff for which it has not been compensated (finding II).
The second item in the claim (finding III) relates to additional expense for labor, loss of time, and unnecessary repairs and overhead expense in the amount of $7,092.22 resulting from lack of elevator facilities which plaintiff contemplated, at the time it made its bid, would be available.
The hospital building, which plaintiff contracted to remodel, was vacated by the Government when the work commenced. There was an elevator in this building which had been operated with electric current supplied by the Government ; there was also an emergency connection with the current supplied by the Edison Company. The only work to be performed by plaintiff on this elevator was to change the control from mechanical to electrical control. When the Government vacated the building there was no current with Avhich to operate the elevator and when plaintiff sought to connect the elevator motor with the current of the Edison *446 Company that company objected and declined to permit this to be done for the reason that the elevator motor carried only 110 volts, whereas the Edison current was 240 volts. The Edison Company would, therefore, not permit connection to be made with its current until the motor had been rewound to carry 240 volts. Plaintiff endeavored to have the Government equip the motor and other parts of the elevator so that it could be used by plaintiff in connection with its work. But this was not done by the Government until about January 3, 1921. Although plaintiff incurred the expenses shown on this account, the item is one, it seems to-us, with respect to which the Government had no resiionsi-bility to plaintiff under the contract or otherwise. Plaintiff thought it would be able to use the elevator in the condition in which it then was but, as matters turned out, it was unable to do so until the motor was rewound. This was a matter wholly outside of the work called for and appears toils to have been a risk assumed by plaintiff in making its bid. Plaintiff requested the Government to have the motor rewound to carry 240 volts and obtained estimates from others as to the cost of doing this work, which estimates were submitted to the Government by plaintiff. Although the Government had not agreed to change the motor and the contract and arrangement between the parties was silent with reference to the elevator, except as to the change of control, the Government proceeded to have the necessary work performed on the motor and made other changes in the elevator equipment at a cost of $350, and the elevator was available for use of the plaintiff after January 3, 1921., It does not appear that the Government ever contemplated or intended to change the motor and other parts of the elevator to operate on a 240-volt current, or that it did not intend to continue using the elevator on its own current after the remodeling of the building had been completed.
In addition to the foregoing, plaintiff could have minimized its expense of $7,092.22 because of lack of elevator facilities by doing the necessary work to make the elevator-usable at a cost of only $350.
The next item in the claim relates to extra expense to plaintiff as the result of interference with progress of the *447 work and the delay therein caused by the occupancy of a considerable portion of the hospital building by the Government before the work was completed (finding IV).
The merit of the claim for $1,616 grows out of a great many circumstances. Employees and equipment were moved into the building and a considerable portion of it was occupied by the Government about July 1, 1920. Other employees and equipment were moved in from time to time. At that time the contract period of 90 days for completion of the work had expired, but failure of plaintiff to have the work completed had resulted from other acts of the Government which had brought about delay in the completion of the work, for which delay the Government under the contract was not responsible for damages. Plaintiff incurred the additional expense claimed because of the interference with and slowing down of the work on account of the occupancy of the building before the work of remodeling was completed, and it is simply a matter with Congress as to whether plaintiff should be reimbursed for this expense which was brought about by a delay for which it was not liable under the contract. There is merit in this item of the claim. The Government had the use of the building at plaintiff’s expense.
The next item (finding V) relates to extra expense of $647 for installation of urinals, together with overhead expense of $122.93, on which a reasonable profit was.$76.99, making a total of $846.92, and concerns the delay of the Government in supplying certain urinals and in furnishing erroneous measurements and dimensions with the result that the work preparatory to connection of these articles had to be torn out and reinstalled. We think there is merit in this claim. The extra expense resulted from erroneous information supplied by the Government upon which plaintiff proceeded to rely. A written order for the extra work mentioned should have been given and payment made therefor. The plaintiff was without fault.
The next item (finding YI) relates to the failure of the Government to furnish, in accordance with the contract, all pipes and fittings, including nickel-plated pipes and fittings, to be installed by plaintiff, for a period of nearly eleven *448 months after plaintiff was ready to use and install all of such articles. Although the Government furnished plaintiff from time to time with certain of these articles, they were furnished in insufficient assortments to enable plaintiff to proceed with the work. The wages paid by plaintiff for plumbers continued and the extra expense to plaintiff for wages of employees during this period was $3,449.81. When the articles were furnished they were installed without delay. Plaintiff was without fault. This claim seems to us to be meritorious.
The next item is somewhat similar (finding VII). The Government agreed under the contract to furnish all hospital equipment, including 13 sterilizers and pipes and fittings therefor, which plaintiff was to install. The plaintiff was ready and prepared to do all work necessary for the installation and to install the sterilizers April 15, 1920, and so notified the Government and requested that such sterilizers be furnished for installation. The Government was unable to do so and plaintiff was supplied by the Government with measurements of the sterilizers so that it could proceed with the performance of the roughing work necessary for their installation so that they could be connected promptly when they arrived. When the pipes and connections for the sterilizers had been installed and all tiling laid and walls painted, it was found when the sterilizers arrived and were delivered by the Government in November 1920, that the measurements supplied by the Government were erroneous and that all of the work which had been done had to be torn out and done over at an additional cost to plaintiff for this particular work, including overhead and reasonable profit, in the total amount of $1,288.05.
The delay in furnishing the sterilizers and the necessity of having to do over the work that had already been done resulted in an extra expense to plaintiff of $232.05 because of an increase in wages which occurred in the meantime. Plaintiff was without fault and this item of the claim has merit.
The next item (finding VIII) relates to the extra expense to plaintiff because of delay by the Government in furnishing six prophylactic sinks and tanks, which plaintiff was to *449 install, until after May 10, 1920, when there was an increase in labor costs. Plaintiff was ready to install these articles in April 1920, and so notified the Government, but they were not furnished for installation by the Government until December 1920. The extra expense to plaintiff on this account was $200.52. This expense was incurred without fault on the part of plaintiff. The Government officers could not have allowed this claim under the contract, inasmuch as it was agreed that the Government would not be responsible for damages resulting from delays caused by it. Plaintiff actually incurred the additional expense because of this delay and whether it should be reimbursed therefor is in the discretion of the Congress. We think the delay was unreasonable and that plaintiff ought to be reimbursed for its expense.
The next three items of claims (findings IX, X, and XI) relate to the inability of plaintiff to obtain hydrated lime, tile plinth block, and 2" x 6" wall tile.
As soon as plaintiff found out that these materials were unobtainable it promptly requested of the Government permission to substitute and use rock lime, marble plinth block, and 3" x 6" wall tile. After some delay the Government granted these requests but not until after May 10, 1920, when there was a general increase in labor costs. Plaintiff actually incurred the increased labor costs claimed in respect of these three items, but it seems to us that the items are of such a character that plaintiff has no meritorious claim against the Government for compensation for this increased expense. Plaintiff agreed to furnish materials of the kind specified apparently without knowing, or investigating to find out, whether they were obtainable. The Government did not know that the articles called for could not be obtained on the market and it granted plaintiff’s request to substitute twenty-three days after it was first made. It does not appear that this delay in granting the request was unreasonable. The Government doubtless wished to satisfy itself before granting the request to make substitutions that the materials were in fact unobtainable.
The next item (finding XII) has reference to an extra expense of $51.11 due to a delay of six months caused by the *450 Government in the work of installing the storm-door vestibule on the Hudson Street entrance to the hospital. Plaintiff was ready to do this work in April 1920, and Avould have •completed it before May 10, 1920, when there was a general increase in wages, but the Government directed that the work be postponed with the view of changing the plans and specifications for the enlargement of the vestibule and it was not until October 1920, six months later, that plaintiff was directed to proceed with this work according to the •original plans. The plaintiff prepared plans for the change proposed by the Government at an expense of $28.27, which plans were prepared at the direction of the Government, and the further extra expense to plaintiff, due to the delay of six months, was $23.50, making a total of $51.77. This delay and expense resulted through no fault of the pflaintiff but was caused wholly by the Government. It seems to us that plaintiff should be reimbursed for the expense of $51.77.
The next items, which will be considered together (findings XIII, XIY, and XV) relate to extra expenses to plaintiff in connection with moving certain soil and vent pipes, floor drains, and marble wainscoting because of erroneous information shown on the plans furnished plaintiff upon the basis of which it made its bid for the work called for. The total wages and overhead expense resulting from these causes was $1,781.24 and the reasonable profit for this extra work which was not contemplated by the contract or by the plaintiff in making its bid was $178.11. Plaintiff’s claim on account of these items is meritorious. The contract did not contemplate this work and plaintiff had no way of knowing that it would be required. It relied upon information furnished by the Government which was erroneous.
The next item, finding XVI, relates to the extra work in connection with the solarium. Compliance with the terms •of the contract and specifications did not produce the result desired by the Government, and plaintiff was required to perform this extra work at the expense stated in the finding mentioned. A written order therefor was refused. We think a written order should have been given. This item amounts to $400.55. In our opinion it should be allowed.
*451 The next items of the claim, which will be considered together (finding XVII), relate to extra expense with reference to- floor tile, pipes, and fittings for kitchen equipment, nickel-plated pipes and fittings for the toilet stalls, the floors in rooms designated C-6 and C-ll, and the steam valves in the premises which were to be reused. Notwithstanding there was no provision in the contract requiring plaintiff to install floor tile and the contract plans and specifications were silent with reference thereto (finding XVII (a)), the Government required plaintiff, without a written order to tear up certain floors, purchase new tile, and install the same. The increased cost to plaintiff, plus a reasonable profit for this work, was $1,803.61.
Although the contract required the Government to furnish all pipes and fittings for the kitchen equipment (finding XVII (b)), it failed to do so and plaintiff was compelled by the Government to purchase the same, in order to avoid having payments due under the contract withheld, at an additional expense plus a reasonable profit of $411.24.
The same was true with reference to the nickel-plated pipes and fittings for the showers, toilet stalls, etc., which the Government was required to furnish (finding XVII (c)). Plaintiff was required by the Government, without any written order, to purchase this equipment at its own expense. It did so at an extra expense plus a reasonable profit of $884.18.
The plans and specifications showed that floors in rooms C-6 and C-ll were only to be repaired (finding XVII (d)). Plaintiff desired to make such repairs as contemplated by thq contract but the Government required it instead to give the whole floor a new coat of cement. Although warned that such coating of the floor would not hold, that it would crack and have to be removed, plaintiff was required by the Government to proceed as directed. It did so and laid the floor under the supervision of the Government’s authorized representative. It cracked and the Government required that it be torn up and a new floor laid under penalty that if this was not done further payments under the contract would be withheld. Plaintiff did this extra work at extra expense plus a reasonable profit, totalling $401.21.
*452 The steam valves, which were in the building, were, under the terms of the contract, to be reused by plaintiff after repacking (finding XVII (e)). The Government refused to permit plaintiff to have possession or control of these valves as they were removed during progress of the work as plaintiff desired and requested. Instead the Government officials kept them in their possession and had the only key to the place where they were stored. When plaintiff was ready to use these valves it requested the Government therefor but they were not delivered for the reason that in the meantime they had been lost, carried away, or stolen, without fault on the part of the plaintiff or any of its servants or emploj^ees. The Government refused to supply any steam valves and compelled the plaintiff to purchase new ones without giving written directions for this extra expense under threat to withhold all payments due plaintiff under the contract. Plaintiff furnished and supplied such new valves at an extra expense plus a reasonable profit for this service, totalling $425.41.
The contract and specifications contained no provision requiring plaintiff to paint certain portions of the garage where no work was to be done (finding XVII (f)), but the Government, after asking for bids on painting the second floor and the hallway, where no work was to be performed, refused to accept such bids and required plaintiff to paint the second floor and the hallway of the garage, as well as to supply certain additional materials. Plaintiff was required to do this work without written directions. It did so at an extra expense plus a reasonable profit for the work, totaling $829.90.
These items total $4,816.21; they are meritorious and, in our opinion, should be allowed. They are clearly extras under the contract. They could have, and we think should have, been ordered in writing and paid for under the contract.
The next item (finding XVIII) relates to two toilet bowls in the hospital building which froze and burst while it was unoccupied and before plaintiff was authorized to commence work under the contract. Plaintiff was in no wise responsible for this; however, the Government required it without *453 written order to purchase new bowls and install them, which it did at an extra expense, plus a reasonable profit of $131.45. This extra expense of plaintiff should have been allowed and paid under the contract.
The next item (finding XVIII (a)) relates to the extra ■work performed in connection with the door to the shower bath in the garage. The Government requested plaintiff to install a larger door to the shower which plaintiff agreed to do without extra charge. After this work had been performed and the door hung in accordance with the Government’s direction, the Government decided that the door was too large and required plaintiff to remove it. This necessitated extra work and expense of cutting the plaster, moving the door jamb, and repainting. Plaintiff requested that the expense of making the change be allowed as an extra, but the Government refused and threatened to withhold payments with the result that plaintiff performed this extra work at an additional cost plus a reasonable profit therefor of $117.81. Plaintiff was right, and we think this item should be allowed.
The next two items of claims presented amount to $3,841.59 and $3,995.70 (findings XIX and XX).
The first results from increased cost to plaintiff in doing the -work due to delays, extra work, and unreasonable requirements of the Government which caused a portion of the work to be carried beyond July 10, 1920, when there was an increase in the cost of materials, labor, and supplies, whereas, had it not been for these delays, the extra work and other requirements of the Government, the work called for by the contract could and would have been completed on or before July 10, 1920. This extra expense was in addition to the various items hereinbefore specifically mentioned.
The second item is made up of extra expense for wages of plumbers, tile setters, and marble workers after July 1, 1920, brought about by the decrease in efficiency of labor on account of conditions inherent in union labor at that time arising from an investigation being conducted by the State of New York. This item of expense was also in addition to all others herein mentioned.
The basis of this claim is that had plaintiff not been delayed by the Government the work called for by the con *454 tract would have been completed on or before July 1, 1920, before this condition arose and caused this extra expense of $7,837.29. The evidence establishes as a fact that plaintiff would have completed the work much earlier than it did but for the delay caused by the Government.
The last two items of the claim, finding XXI, amounting to $8,207, are made up of additional overhead expense not directly chargeable to any of the items hereinbefore discussed and additional wages paid to the superintendent, foreman, timekeeper, watchman, etc., and for increased telephone and other charges. These expenses were actually incurred by plaintiff in performing the work required of it under the contract, but the evidence fails to establish that these expenses arose from causes for which the Government was responsible and for which it should, in equity, be charged. The record does not establish with any definiteness just what brought about this additional expense but it seems clear to us that the expense was not brought about by any direct act of the Government. On the contrary the record as a whole justifies the conclusion that this expense was brought about by delays arising from disturbed labor conditions in plaintiff’s plant, as well as in the industries generally from which material required in the performance of this contract was obtained.
The evidence establishes beyond question that the actual cost to plaintiff of performing the work required by the Government in the remodeling of the hospital in question, exclusive of the cost of extras ordered in writing and paid for, and exclusive of profit, was $34,765.54 in excess of the contract price of $124,950 paid, and the evidence further establishes to our satisfaction that the actual value to the Government of the work performed by plaintiff in remodeling the hospital, as required by the Government and of which the Government received the benefit, was $19,032.78 in excess of the amount allowed and paid under the contract. This amount includes the reasonable profit of $844.64 on fourteen certain items of extra services and for materials purchased and supplied by plaintiff outside the contract provisions for which the Government, we think, erroneously refused to give written orders. The amount of $19,032.78 *455 does not include any amount on account of the claimed extra expense of $6,958.45 due to lack of elevator facilities for a time, or the total claimed extra expense of $1,377.98 due to lime, plinth block, and wall tile, called for by the contract, being unobtainable, or $8,207, additional overhead expense , and additional wages paid to the superintendent, foreman, timekeeper, watchman, etc., and for increased telephone and other charges, by plaintiff. The Government’s delay in granting plaintiff’s requests for permission to make substitutions above mentioned was not unreasonable and the Government received nothing of extra value on account of these items.
The foregoing findings and this memorandum of our conclusions with respect to the various items of the claim presented by plaintiff will be certified to the Senate in accordance with Senate Resolution 326.
Whaley, Judge; Williams, Judge; GReen, Judge; and Booth, Chief Justice, concur.