Williams, Judge,
delivered the opinion of the court:
This case grows out of the construction of the battleship Virginia, for which the plaintiff and the United States, represented by the Secretary of the Navy, entered into a contract on February 15,1901. The contract called for the completion of the vessel in 36 months from the date of the contract, that is on or before February 14, 1904. Work under the contract was completed by the plaintiff and the vessel was delivered to the defendant at the Norfolk Navy Yard on April 25, 1906, 800 days beyond the contract period for completion.
Because of the length of time the case has been on the docket of the court a brief reference to the record history of the case is deemed proper. The original petition was filed on April 8,1909, practically three years after the completion *14 and delivery of the vessel. The amended petition, upon which the case is heard, was filed two and one half years thereafter, on November 23, 1911. Following the filing of the amended petition plaintiff proceeded with the taking of its testimony, which was concluded in chief prior to December 9, 1919, on which date the parties entered into a stipulation suspending the taking of further testimony pending the decision of this court in Moran Bros. Co. v. United States, a case growing out of the construction of the battleship Nebraska, in which claims substantially the same as those made by the plaintiff in the instant case were involved. The Moran case was decided on August 14, 1925, 61 C.Cls. 73.
Thereafter, on April 1, 1926, this case and three others brought by the plaintiff, no. 30373 West Virginia, no. 30374 Maryland, and no. 30375 Charleston, were referred to a commissioner of the court before whom the plaintiff resumed the taking of testimony, which it closed on the four cases on January 3, 1929. The defendant previous to that date had closed the taking of its testimony. On January 16, 1930, the four cases were rereferred to a commissioner for a report of the facts. The record of the cases consists of four volumes of printed testimony, oral and documentary, of nearly four thousand pages, and thousands of pages of testimony in manuscript form. The commissioner gave a most careful and exhaustive study of the testimony, to the request for findings, and to the various contentions of the parties, and on December 2, 1931, made an elaborate report containing detailed findings as to the material facts in this and the three companion cases. Considering the magnitude of the work involved, and the fact that the commissioner during the period was also carrying his full part of the current work of the court, the report was expeditiously made.
Following the filing of the commissioner’s report counsel for the Government entered a motion for an extension of time in which to file exceptions to the same, which motion was allowed, and the exceptions were filed on April 12, 1932. On April 23, the defendant filed a motion to continue the case to the October 1932 calendar, which motion the court allowed on May 7, 1932. Thereafter, on May 16, 1932, the *15 plaintiff filed its brief on the merits of the case, also its answer to the defendant’s exceptions to the commissioner’s report. On June 15, 1932, plaintiff filed its motion to limit the time within which the defendant should file its brief. On June 21, 1932, the court entered an order that the defendant file its brief on or before August 15,1932, and that the case be placed on the October 1932 calendar for trial. August 12, 1932, defendant filed its motion for an extension of time in which to file its brief to September 15, 1932, which motion was allowed by the court on August 19, 1932. Upon the call of the October 1932 calendar the defendant’s brief not having been filed, the case was placed on the January 1933 calendar for trial. The defendant’s brief not being on file on the call of the January 1933 calendar the case was continued and placed on the April 1933 calendar for trial. The defendant’s brief not having been filed, the case on the call of the April 1933 calendar was passed. On May 8, 1933, the court entered an order directing the defendant to file its brief on or before August 1, 1933. On July 29, 1933, defendant filed its motion for an extension of time to September 15, 1933, for filing its brief, which motion was allowed on August 7, 1933. The defendant filed its brief on September 12, 1933, and the case was argued and submitted to the court on October 10, 1933, or within one month after it was ready for trial.
The plaintiff in the amended petition asks for a judgment against the United States in the sum of $363,470.46. The items of the claim are as follows:
1. Change from a sheathed to an unsheathed vessel___$79, 845. 00
2. Damages on account of delay caused by changes_ 198,144. 00
3. Increased expense of gun foundations_ 8,139.71
4. Damages for delay in delivery of contract plans_ 24,194. 00
5. Damages for delay in delivery of armor and ordnance— 41,193. 00
6. Admitted balance due_ 11, 954.75
The items of the claim will be considered in the order stated:
1. Change from a sheathed to an unsheathed vessel. — The act of March 3, 1899, provided that the battleships therein authorized be sheathed and coppered. There being doubt in the mind of Navy Department officials as to the wisdom *16 of sheathing and coppering vessels, and apparently anticipating a possible change in the law requiring it, the Bureau circular calling for bids for the construction of the vessels authorized by the act requested bidders to submit two classes of bids, one for sheathed and coppered ships in accordance, with the requirements of the act, and one for the construction of the same ships not sheathed and cop-pered, the Department reserving the right to adopt either form of construction in case it should be authorized to do so, at the price named in the bid for such sheathed or unsheathed ships, the award, however, to be based on the bid for sheathed and coppered ships. The plaintiff submitted a bid of $3,593,000 for a sheathed ship (the Giovernment in the meantime having determined to perform the work of coppering the vessel) and a bid of $3,540,000 for the construction of the same vessel with the sheathing omitted. After some negotiations between the plaintiff and the Navy Department relating entirely to a sheathed vessel, in which the plans and specifications were by mutual agreement modified, the contract was awarded plaintiff for the construction of a sheathed vessel for a lump sum of $3,590,000, the contract price to be increased or decreased as the cost of changes,[1] which were authorized in the contract, might add to or diminish the cost pf construction.
*17 Subsequent to the signing of the contract and before work upon the vessel had started, the Secretary of the Navy, in the exercise of the discretion vested in him by the act of March 3, 1901, 31 Stat. 1132, decided to omit the sheathing of the vessel. He immediately notified plaintiff of that fact and stated that the change from a sheathed to an unsheathed vessel would be referred to the board on changes for determination of the cost thereof. The board on changes considered the question of the omission of sheathing of the vessel, and ascertained and determined that the reduced cost of construction because of such omission was $129,845, which amount was thereafter deducted from the contract price.
The plaintiff contends, first, that the United States was obliged in the event of a change from a sheathed to an unsheathed vessel to accept the alternate bid of the plaintiff and reduce the contract price only $53,000 on account of the change involved, and second, that the omission of the sheathing was not a change “ authorized by law ” at the time the contract was made, hence the contract provision authorizing changes, however broad it otherwise might be, did not contemplate or authorize the change to an unsheathed vessel for that was a change not embraced in the class of changes “ not contrary to law ”, and that consequently the decision of the board on changes as to the reduced compensation because of the omission of the sheathing was not binding on the plaintiff.
In Moran Bros. Co. v. United States, supra, we held that the omission of the sheathing of the battleship Nebraska, under a contract similar to the contract in this case, and where like bids were submitted, was a change within the meaning of the contract, and that the decision of the board on changes as to the cost thereof was conclusive. In that case, however, the contract was entered into subsequent to the act of March 3, 1901, which authorized the Secretary of the Navy to exercise his discretion as to sheathing and coppering. The deduction made by the board on changes was also less than the difference of the contractor’s two bids, *18 hence the precise contention which the plaintiff makes in this case was niot there made.
The Navy Department in its circular soliciting bids reserved the right “ to reject any and all bids not advantageous to the Government.” Plaintiff’s alternate bid for an unsheathed vessel was not accepted by the Department, and was not considered in any way in making the contract for a sheathed vessel. Contracts for the construction of the three battleships authorized in the act ¡of March 3, 1899, were awarded, one to the plaintiff, one to Moran Bros. Co., and one to the Bath Iron Works, each for a contract price of $3,590,000 for a sheathed ship. The plans and specifications of the three ships were the same. There was a difference ¡of $53,000 between plaintiff’s bids, a difference of $168,000 between the bids of Moran Bros. Co., while the Bath Iron Works made no alternate bid for an unsheathed ship. The mere statement of these facts refutes the contention that the amount of the deduction in contract price because of the omission lof the sheathing was contractually fixed by the plaintiff’s alternate bid. The Government certainly would not contract with the plaintiff to reduce the contract price of the Virginia only $53,000 in case the omission of the sheathing was decided upon, while at the same time it was contracting with Moran Bros. Go. to reduce the contract price of the Nebraska more than three times that amount in case of a like change in that vessel. Furthermore plaintiff was not the “lowest and best responsible bidder ” for the construction of an unsheathed ship and the Secretary was without authority to accept its alternate bid. It is clear that he did not accept the alternate bid, and did not contract with the plaintiff on the basis of it. In these circumstances neither the plaintiff nor the Government was bound by any figures suggested in the circular proposal or submitted by plaintiff in its bid. These were all merged in the contract as it was made and entered into, providing for the construction of a sheathed vessel at a fixed price, with the provision that changes might be made in the plans and specifications and that in case such changes were made, where the cost was in excess of $500.00 the increased or *19 diminished cost thereof should be ascertained and determined by a board on changes.
The words “ as are not contrary to law ” in the contract provision that “the drawings, plans, and specifications aforesaid may be changed, and such alterations as are not contrary to law may be made in this contract ”, mean such changes and alterations as are not contrary to law at- the time they are made. The general principle that a contract speaks in relation to laws in existence at its date is not applicable, and the numerous cases cited in support of this rule are not in point. The act of March 3, 1901, above referred to, vested discretionary power in the Secretary of the Navy to omit the sheathing of the vessel. In the exercise of this discretionary power he directed the omission of the sheathing. The change was “ not contrary to law ” and was therefore a change properly referable by him, under the terms of the contract, to a board on changes for the ascertainment and determination of the cost thereof. The board determined the reduced cost of construction because of the change was $129,845.00. In the absence of a showing of fraud or such gross error as may imply bad faith amounting to fraud the decision of the board is conclusive. United States v. Gleason, 175 U.S. 588; Rifley v. United States, 223 U.S. 695.
2. Damages on account of delays caused by changes.— During the progress of the work many changes were made in the plans and specifications of the vessel. These changes were ordered without unreasonable delay on the part of the Government, but because of the time and labor required of the plaintiff in making the necessary drawings, and the additional time required in the performance of the work in accordance with the changes, they operated to delay the progress of the work and resulted in a total delay of 167 days in the completion of the vessel. The plaintiff under this item seeks to recover the additional cost and expense incurred because of the continuance of the work on the vessel over a longer period than that which would have obtained had not these changes been authorized and made. The claim is based on the contract provision “ that if changes *20 are thus made, the actual cost thereof and the damage, if any, caused thereby shall be ascertained, estimated, and determined by a board of naval officers appointed by the Secretary of the Navy.”
The board on changes in its determination of the cost of the various changes took into consideration both the direct and indirect cost. The direct cost was the actual cost of materials and labor involved in the change. The indirect cost was an additional allowance for general expenses resulting from the change such as use and wear of tools' and plant, additional superintendence, etc., computed in the manner stated in finding XIII. The board, however, did not in respect to any of the changes take into consideration or make an allowance for damages resulting from the general delay of the contract work arising from the change. The plaintiff contends that the additional cost it was put to because of the general delay in the work resulting from the changes constitutes “ damage ” within the meaning and contemplation of the contract provision above quoted, which it w'as the duty of the board on changes to determine in connection with its consideration and determination of the cost of the changes. It is further contended that the question of “ damage ” arising from the delay in the work caused by the changes, not having been considered and determined by the board on changes, its decisions as to the cost of the changes are not conclusive against the plaintiff’s right, in this suit, to assert its claim and to’ recover in respect to such damage.
This question was considered by the court in Moran Bros. Co., supra, in which a like claim for damages was asserted by the contractors of the battleship Nebraska. The pertinent contract provisions of that case and the instant case are identical. The court in deciding that case said:
“ * * * Changes were authorized, and this implied that they would, or at least might, produce delays. The board’s determination settled any compensation due on this account. It was never contemplated either by the statute or by the contract that delays incident to changes would subject the Government to damage beyond that involved in the changes themselves. The appropriation for the vessel was *21 limited. It had to be constructed, if at all, within definite limits of amount. But the right to make changes was a right expressly contracted for and if the defendant were. made liable for consequential and other damages attributable to delays resulting from changes, the result would be either that the stipulated right to make changes was not effective or that the cost of the vessel might be vastly increased. * * *”
The decision in the Moran case followed an early decision of the court in the case of McCord v. United States, 9 C.Cls. 155, where among other questions presented claim was made for damages resulting from delay in completion of a vessel of the Monitor type, because of changes in the plans and specifications. The alleged breach upon which the claim was founded was twofold: First, by unreasonable delays in furnishing plans and specifications; and, second, by making such changes in the plans as prevented the contractor from doing the contract work for a long time after the expiration of the time within which it was required to be done. It was held that the United States made the changes without unreasonable delay, and that it was not liable for damages resulting from the delay incident to the changes. The court said:
“ The contract for the construction of the Etlah provided that alterations might be made from the original specifications, and that, if they caused extra expense, that should be paid for; and if they effected a reduction of the cost, that should be subtracted from the contract price.
“ This privilege of the United States to make alterations on the terms stated being expressly provided for in the contract, the contract price related to that privilege as much as to any other provision in the contract, and therefore it must be taken as included in that price, and paid for in it. And the United States cannot be held liable in damages for exercising a privilege they had purchased, but only for abusing it; and the fact is found that they did not abuse it, but made the alterations shown without unreasonable delay. And this has reference, as the parties must have had, to the nature of the undertaking.”
The decision of this court in the McCord case was reviewed and affirmed by the Supreme Court in Chouteau v. United States, 95 U.S. 61, where the case was taken on appeal by McCord’s assignee.
*22 The court said:
44 The Court of Claims finds that the delay in completing the vessel was caused by the changes ordered by the United States, and that, owing to the rise in the prices of the labor and materials on the work done under the original contract, and without reference to the changes, the cost of that work was increased to the builder $118,283.20.
44 The appellants asserted a claim for this amount also, which the court refused.
“ It is very clear that both parties contemplated the probability that the work would not be completed at the precise period of eight months from the date of the contract. They also contemplated that changes would be made in. the construction of the battery. They made such provision for these matters as they deemed necessary for the protection of each party.”
Secretary of the Navy Charles J. Bonaparte, afterwards Attorney General of the United States, in a decision made on October 3, 1905, in which he construed a provision in a contract between the United States and the Fore River Shiiibuilding Company identical with the provisions of the contract in this case, said:
“ It will thus be seen that the contract provides for the determination, in a specified way, of the ‘ actual cost ’ of changes and ‘ the damage, if any, caused thereby.’ The word 4 damage ’ is evidently here intended to be taken in its accurate and technical meaning, as determined by the well-settled jurisprudence of this country with respect to the law of damages. It is a well-settled principle of law that, in the absence of any special provision to the contrary, the damage caused by anything must be its direct and immediate consequence and not the result of any intermediate causes, which may have been themselves due to the act or omission on which the claim for compensation is founded. If it had been intended that the word should be interpreted in a different sense in this passage, it would have been very easy to have inserted a clause to that effect.
“ The claim of the contractor in this case is, stated very briefly, that if changes be made, or suggested as likely to be made, by the Department, and this fact leads it to delay the work on the vessel, so as to avoid the duplication of labor if the change shall be actually made, then all the consequences of such delays are to be construed a part of the 4 damage ’ to which it will be entitled. It seems to me very clear that this contention cannot be sustained. The con *23 tract says nothing of delay as a cause of damage or as furnishing a foundation for a claim to compensation. It says distinctly that delays caused by changes shall not be charged against the contractor in estimating the period prescribed for the completion of the vessel. If it had been the intention of the parties that these delays should have any other legal consequence, the contract would undoubtedly have said so. Not having said so, it must be conclusively presumed that they did not mean so.”
We think the meaning given the word “ damage ” as it is used in this clause of the contract is correctly stated by Secretary Bonaparte. The court approved this construction in Moran Bros., supra, and the Fore River Shipbuilding Company cases, 62 C.Cls. 307 and 319. These cases, as well as the McCord case, are directly in point and are controlling. The plaintiff cannot recover as to this item of its claim.
3. Increased cost of gum, foundations. — The question presented by this item of the claim is in every respect identical to a claim made by the plaintiff in Moran Bros. Co. v. United States, supra, which was denied by the court.
4. Damages because of the delay in delivery of contract plans. — This claim is disposed of by the finding (no. VII) that “ it does not appear that the final completion of the vessel was delayed by the fact the contract plans were not wholly delivered to plaintiff earlier than May 16, 1901.”
5. Damages for delay in delivery of armor and ordnance. — The third article of the contract provides that the Government “ shall furnish all the armor plates and armor bolts to be used in the construction of the vessel, including such as may be required in the construction of the side and diagonal armor, turrets, barbettes, casemates, conning tower, armored tubes, signal tower and protection for guns and loading positions.” The Government was also required by the specifications to furnish the ordnance and ordnance outfit of all kinds. The contract further provides that the Government shall deliver all armor and armor bolts at the contractor’s shipyard “ within the time and in the order required to carry on the work properly.”
The Navy Department, on November 26, 1900, entered into a contract with the Carnegie Steel Company to furnish the armor for the Virginia and certain other battleships *24 and armored cruisers, the construction of which had theretofore been authorized by various acts of Congress. This contract provided that preliminary drawings sufficient to forge and rough-shape armor were to be furnished by the Government 9 months before the required date of delivery, and final detailed drawings 6 months before the date of delivery. The plaintiff, within a reasonable time after making the contract, prepared and delivered to the Navy Department the required armor plans, which plans were approved by the Navy Department, and in succession were delivered by it to the Carnegie Steel Company. The Carnegie Steel Company was at all times greatly behind in the delivery of armor, and the defendant was thereby unable to fulfill its contract obligations with the plaintiff to- furnish all armor and armor bolts at the contractor’s shipyard “ within the time and in the order required to carry on the work properly.” There was also delay in delivery of the ordnance and ordnance outfit within the time when they were required by plaintiff to properly carry on the work. Plaintiff’s requests for the delivery of ordnance and the dates on which it was delivered are shown in finding X. Failure of the Government to deliver the armor and ordnance when required to properly carry on the work delayed plaintiff in placing the armor and in doing the work adjacent to the armor, and in placing the ordnance and ordnance outfit on the vessel, and resulted in a delay of 127 days in the final completion of the vessel. The Government in that regard breached its contract and is liable to the plaintiff for the damages arising therefrom. The fact that plaintiff was granted an extension of time equal to the delay does not relieve the defendant from its obligation to- compensate plaintiff for damages sustained by reason of the breach. Sanborn v. United States, 46 C.Cls. 254; Moran Bros. Co. v. United States, supra; Fore River Shipbuilding Co. v. United States, supra.
6. Admitted balance due. — There is no controversy as to this item of the claim. It is an amount admittedly due plaintiff for work under the contract, and has not been paid because of the plaintiff’s refusal to execute a release in full *25 of all claims and demands against the Government growing out of the contract.
The plaintiif is entitled to judgment on the 5th and 6th items of its claim as follows: For damages resulting from 127 days’ delay because of the delay of the Government, in furnishing armor and ordnance, the sum of $37,829.49, and the sum of $11,954.75, a balance admittedly due, or a total sum of $49,784.24. Judgment in that amount is awarded, and the petition as to the other items claimed is dismissed.
It is so ordered.
Whaley, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.

 “ No omission in the drawings, plans, .or specifications of any detail, object, or provision necessary to carry this contract into full and complete effect, in accordance with the object and intent of the acts of Congress above referred to, shall operate to the disadvantage of the party of the second part, but the same shall be satisfactorily supplied, performed, and observed by the party of the first part, and all claims for extra compensation by reason of, or for, or on account of such extra performance, are hereby, and in consideration of the premises, expressly waived; and it is hereby further provided, and this contract is upon the express condition, that the drawings, plans, and specifications aforesaid may be changed, and that such alterations as are not contrary to law may be made in this contract by the party of the second part, but no such changes shall be made in any respect when the cost shall, in the execution of the work, exceed five hundred dollars ($500), except upon the written order of the Secretary or Acting Secretary of the Navy; that, if changes are thus made, the actual cost thereof, and the damage, if any, caused thereby, shall be ascertained, estimated, and determined by a board of naval officers, appointed by the Secretary of the Navy, and that the party of the first part shall be bound by the determination of said board, or a majority thereof, as to the amount of increased or diminished compensation the said party of the first part shall be entitled to receive, if any, in consequence of such change or changes.”