## GEORGE A. FULLER CO. v. UNITED STATES.

### No. 44585.

Court of Claims.

Feb. 3, 1947.

Alexander M. Heron, of Washington, D. C. (Hinton & Heron, of Washington, D. C., on the briefs), for plaintiff.

Currel Vance, of Washington, D. C., John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and WHITAKER, MADDEN, JONES, and LITTLETON, Judges.

WHITAKER, Judge.

The plaintiff sues the defendant for damages for delays caused by defendant in failing to furnish models on time, for delays caused by changes made in the work, and for delay in the approval of the limestone to be used.

The plaintiff entered into a contract for the erection of the Archives Building in the City of Washington, D. C. Under it the Government agreed to furnish models for the ornamentation of granite, limestone, bronze, plaster, and other materials used in the construction of the building. There were delays in the furnishing of the models for the granite and limestone, and for the plaster, and for the bronze and

glass. The plaintiff also claimed that it had been delayed by changes made by the Government and by the Government's failure to promptly approve the limestone for the building, but it says these delays ran concurrently with the model delays, and, hence, it will be unnecessary to consider them, since we are of opinion that the delays in furnishing the models for the building delayed its final completion and that the Government is liable therefor.

The contracting officer, on February 11, 1935, in response to plaintiff's letters of December 5, 1934, and January 16, 1935, claiming delays on account of the tardy furnishing of models and of the approval of limestone, and on account of a carpenters' strike, and on account of changes, wrote plaintiff, in part, as follows: "From time to time you notified this office of delay due to the lack of models, which constituted the necessary notification within ten days as required by your contract. The engineer verifies your statement that the delay has reached the extent of six months from causes beyond your control and without your fault or negligence. Under Article 9 of your contract note will be made at time of final settlement of one hundred and eighty (180) calendar days delay on account of the conditions outlined above in connection with the waiver of liquidated damages. It is noted that you state in letter of January 16, that all of the models had not yet been received by your subcontractors. It is understood at this writing that the last models have now been received but it appears that the delay taken into consideration as named above will be sufficient to cover any other items which might arise. You state that you have claims for additional cost on account of the delay set forth above. You are reminded that your contract contains no provision for payment on account of delays under Article 9 thereof, and in accordance with the rulings of the Comptroller General of the United States, this Division would be without authority to make payment on such claims if you present them."

■ This letter constitutes an admission on the part of the Government that the contractor was in fact delayed for a period of six months. It is admitted that the defendant caused the delays. The defendant offers no evidence sufficient to overcome this admission and, hence, we accept it as a statement of the true facts. Irwin & Leighton v. United States, 101 Ct. Cl. 455. Plaintiff has been unable to show that the delay was of longer duration, and we have accordingly found as a fact that plaintiff was delayed in the completion of the work for a period of six months due to the defendant's failure to furnish models on time. Under prior decisions of this court and of the Supreme Court, it follows that the defendant is liable for the damages sustained as a result of these delays.

■ It is true there is no express provision in the contract which renders the Government liable for delays it may cause the contractor in the performance of the work, nor is there any express provision exempting it from liability for such delay; it is, however, an implied provision of every contract, whether it be one between individuals or between an individual and the Government, that neither party to the contract will do anything to prevent performance thereof by the other party or that will hinder or delay him in its performance.

Williston on Contracts, Section 1293–A, quotes the following statement from Gay v. Blanchard, 32 La.Ann. 497: "Where a party stipulates that another shall do a certain thing, he thereby impliedly promises that he will himself do nothing which will hinder or obstruct that other in doing that thing."

Williston says that "such hindrance is moreover a breach of contract." In Section 1318 he says: "In any case where the plaintiff's performance requires the cooperation of the defendant, as in a contract to serve or to make something from the defendant's materials or on his land, the defendant, by necessary implication, promises to give this cooperation and if he fails to do so he is immediately liable though his only express promise is to pay money at a future day. Indeed, there is generally in a contract subject to either an express or an implied condition an implied promise not to prevent or hinder perform-

ance of the condition. Such prevention, if the condition would otherwise have been performed, is, therefore, an immediate breach of contract, and if of sufficiently serious character damages for the loss of the entire contract may be recovered."

In support of these statements Williston cites, among a number of other cases, United States v. Peck, 102 U.S. 64, 26 L.Ed. 46; and Lovell v. St. Louis Mutual Life Insurance Co., 111 U.S. 264, 274, 4 S.Ct. 390, 28 L.Ed. 423. An examination of these cases shows that they fully support the statements made. The last case cited above relies upon the decision of the Supreme Court in United States v. Behan, 110 U.S. 338, 4 S.Ct. 81, 85, 28 L.Ed. 168. This was a case brought against the United States for wrongfully terminating a contract. The Supreme Court affirmed the judgment of this court awarding damages therefor. In the course of its opinion, among other things, the Supreme Court said: "The willful and wrongful putting an end to a contract, and preventing the other party from carrying it out, is itself a breach of the contract for which an action will lie for the recovery of all damage which the injured party has sustained."

■ It is a necessary corollary to this principle that one who, while not preventing the other party from carrying out the contract, nevertheless hinders or delays him in doing so, breaches the contract, and is liable for the damage which the injured party has sustained thereby. The Supreme Court so held in United States v. Smith, 94 U.S. 214, 24 L.Ed. 115. In this case it was said: "Under such circumstances, the law implies that the work should be done within a reasonable time, and that the United States would not unnecessarily interfere to prevent this." The Supreme Court accordingly affirmed the judgment of this court awarding damages for the unlawful delay. See also United States v. Speed, 8 Wall. 77, 84, 19 L.Ed. 449, and Restatement of the Law of Contracts, Section 315.

■ Indeed, so far as we have been able to find, it has never been doubted that the Government is liable for delays caused by it, in the absence of a clause in the con-

tract expressly exempting it from liability therefor. Shortly after this court was established, the Supreme Court so held in Clark v. United States, 6 Wall. 543, 18 L.Ed. 916. It also so held in United States v. Speed, supra; and in United States v. Smith, supra; and in United States v. Mueller, 113 U.S. 153, 156, 5 S.Ct. 380, 28 L.Ed. 946; and in United States v. Wyckoff Pipe & Creosoting Co., 271 U.S. 263, 46 S.Ct. 503, 70 L.Ed. 938; and this was implied in Plumley v. United States, 226 U.S. 545, 548, 33 S.Ct. 139, 57 L.Ed. 342.

The decisions of this court so holding are too numerous to list them all; but see Weehawken Dry Dock Co. v. United States, 65 Ct.Cl. 662, Id., 672; Carroll v. United States, 67 Ct.Cl. 513; Donnell-Zane Co. v. United States, 75 Ct.Cl. 368; Pope v. United States, 75 Ct.Cl. 436; Levering & Garrigues Co. v. United States, 73 Ct.Cl. 566; Knauff Co. v. United States, 78 Ct.Cl. 423; Karno-Smith Co. v. United States, 84 Ct.Cl. 110; Ouilmette Construction & Engineering Co. v. United States, 89 Ct.Cl. 334; Phoenix Bridge Co. v. United States, 85 Ct.Cl. 603; Plato v. United States, 86 Ct.Cl. 665; Sobel v. United States, 88 Ct.Cl. 149; Newport News Shipbuilding & Dry Dock Co. v. United States, 79 Ct.Cl. 1, 25, 37, 46; and Harwood-Nebel Construction Co. v. United States, 105 Ct.Cl. 116.

It is true in the cases of Wells Brothers Co. v. United States, 254 U.S. 83, 41 S.Ct. 34, 65 L.Ed. 148, and Wood et al. v. United States, 258 U.S. 120, 42 S.Ct. 209, 66 L.Ed. 495, it was held that the defendant was not liable for damages for delay, but this was because of express provisions in these contracts exempting the Government from liability therefor. In the Wells Brothers Co. case [254 U.S. 83, 41 S.Ct. 35] the contract provided that "no claim shall be made or allowed to the contractor for any damages which may arise out of any delay caused by the United States." There was a similar provision in the contract in the case of Wood et al. v. United States. But, in the absence of such an express provision, neither this court nor the Supreme Court has ever exempted the Government from liability for damages for delays not contemplated by the contract.

Nor has it ever been thought that the provisions of Article 9, providing for an extension of time for completion of the work on account of delays due to unforeseen causes, including those caused by the Government, would serve to relieve defendant of liability for damages for such delays. In the following cases this court has held that this provision did not relieve the Government from liability: Levering & Garrigues Co. v. United States, supra; Newport News Shipbuilding & Dry Dock Co. v. United States, supra, and Karno-Smith Co. v. United States, supra. This provision for an extension of time related to the assessment of liquidated damages against the contractor and had no reference to the recovery of damages by the contractor for delays caused by the Government.

The proceedings of the Interdepartmental Board of Contracts and Adjustments, which board formulated and adopted the Standard Form of Government Contract for Construction, which is involved in this case, demonstrate that it was not intended by Article 9 of the contract, providing for an extension of time, to exempt the Government from liability for damages for delay. Relevant proceedings of this board are set out in findings 10 to 16 in the case of Harwood-Nebel Construction Co. v. United States, 105 Ct.Cl. 116, and were relied upon in support of the decision in that case.

This board was created on November 22, 1921, for the purpose of formulating such a standard government contract. On August 20, 1926, it finally agreed upon the form thereof and on that date the contract involved in this case was promulgated. Some six years later it was called to the attention of that board that the Comptroller General and others had ruled that in view of the provisions of Article 9 a contractor could not recover damages for delays caused by the Government. The board met on November 11, 1932, for the purpose of considering this situation.

It was stated by one of the members of the board that it was not intended by Article 9 "that the contractor should be deprived of actual damages necessarily incurred by acts of the Government." All the members of the board seemed to agree with this statement, and a committee was appointed to consider means to correct the rulings denying damages.

At the following meeting a week later, it was recommended that a proviso be added to Article 9 to read: "Provided, further, that this article shall not be construed as denying the contractor actual, reasonable and necessary expenses due to delays caused by the Government." This provision was discussed at length at this meeting and at meetings held on November 25, December 2, December 9, December 16, and December 23, 1932. It was, however, decided that it was not necessary to amend Article 9, and that it was inadvisable to do so, since the situation could be corrected by proper instructions to contracting officers for drafting the specifications.

Accordingly, the board drafted a letter "To the Heads of Departments and Establishments," which reads as follows:

"Subject: Standard Government Contract—Delays, Damages.

"The attention of the Interdepartmental Board of Contracts and Adjustments has been brought to a number of cases where contractors, because of the language of the contract, have been denied additional compensation for extra expenses due to delays caused by the Government. An examination of these cases has disclosed that there have been incorporated in the specifications provisions reserving the right to the Government to suspend the work, or other provisions which contemplated delays of the work by the Government, without providing for additional compensations to the contractor on account of such delays (12 Comp.Gen. 179; id. 227).

"This Contract Board in its work of standardization was directed, in the order creating it, to eliminate those uncertainties of construction and hazards to be assumed by the contractor which have operated to increase the cost of Government work. Accordingly, there was omitted from the Standard Form of Construction Contract any provision which reserved the right to the Government to suspend the work or denied the contractor damages due

to delays caused by the Government. See Wells Bros. Co. v. United States, 254 U.S. 83, 41 S.Ct. 34, 65 L.Ed. 148.

"The Contract Board has concluded that it would be inadvisable to amend at this time the Standard Form of contract in the particular indicated but that this situation should be remedied by proper administrative action.

"It is evident that the incorporation in the specifications of provisions reserving to the Government the right to suspend the work, without compensation to the contractor, tends to increase the cost of the work. Therefore, such a provision should be used only in exceptional cases where conditions fully justify it and in such cases this Contract Board suggests the use of the following language in the specifications in fairness to the contractor:

" 'The Government may at any time suspend the whole or any portion of the work under this contract but this right to suspend the work shall not be construed as denying the contractor actual, reasonable, and necessary expenses due to delays caused by such suspension, it being understood that expenses will not be allowed for such suspensions when ordered by the Government on account of weather condition.' "

Here, then, is a declaration by the Government agency drafting the contract for use in all government construction contracts, and which is involved in this case, that it was not intended thereby to deprive the contractor of its right to damages for delays caused by the acts of the Government. The party drawing the contract so construes it. How can the courts give it a contrary construction?

Based in part upon the proceedings of this board, we held in Harwood-Nebel Construction Co. v. United States, supra, that the defendant was liable for damages caused by its delay. See pages 160 to 161 of 105 Ct.Cl. We have never held to the contrary.

These holdings in no way conflict with the decisions of the Supreme Court in Crook Co. v. United States, 270 U.S. 4, 46 S. Ct. 184, 70 L.Ed. 438, and United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53. These cases exempted the Govern-

ment from liability for damages caused by delays incident to the making of changes, but this was for the reason that the Government had reserved the right to make changes and because it necessarily followed that some delay would result therefrom. Here there was no reservation of a right to delay furnishing the models.

It had been recognized by this court before even the Crook case had been decided that the Government was not liable in damages for reasonable delays due to making changes; Moran Brothers Co. v. United States, 61 Ct.Cl. 73; but in that case we called attention to the difference between a delay caused by the expressly reserved right to make changes and one caused by the Government's failure to furnish materials which the contractor was to use in performing his contract. On page 105 of 61 Ct.Cl. in our opinion in that case, after discussing the delays due to changes, we said: "The delays caused by the Government's failure to supply armor and ordnance stand upon a different basis. There is nothing in the contract authorizing or implying these delays. The understanding was that certain things would be furnished as needed. They were not furnished and the Government breached its contract in that regard. It is therefore liable for the damages arising from this breach."

Neither in the Moran Brothers Co. case nor in this case was there any provision, either express or implied, exempting the Government from liability for damages incurred as a result of delays in the furnishing of the materials to be used by the contractor. In the absence of such a provision, we think, under all the authorities, that the Government has breached its implied agreement not to prevent or hinder or delay the contractor in the performance of its contract.

But, it is said that the Supreme Court in United States v. Foley, 67 S.Ct. 154, has reached a contrary conclusion. In that case the contractor was required to install a field lighting system at the National Airport, Gravelly Point, Virginia. It was to install it as the shoulders on the runways were rough-graded. The Government, however, due to conditions beyond its con-

trol, was unable to rough-grade these shoulders in time for the contractor to complete its work within the contract time. The Supreme Court held that the Government had not warranted that it would have these shoulders ready in time for the contractor to complete its work in the contract time and that for that reason it was not liable for the delays caused by its inability to do so. In the case at bar we think the Government did agree to furnish these models as soon as the contractor needed them. We are of the opinion that it was an implied obligation on the part of the Government not to delay the contractor's work by a failure to furnish it the models as required, and that if it did so, it is liable to it for the consequent damages. We do not believe the Supreme Court intended by its decision in the Foley case to overrule its numerous prior decisions so holding.

■ We think that the Government when it agreed to furnish the models without condition was bound to furnish them on time as much as if an express provision to this effect had been incorporated in the contract, and that if it failed to do so it breached this provision of the contract and is therefore liable for any damages resulting therefrom.

■ Certainly the Supreme Court would not exempt the Government from liability when the delay was wilful, as in James Stewart & Co. v. United States, 63 F.Supp. 653, 105 Ct.Cl. 284, where the architect, who had to pass on the models to be furnished by the Government, went to Europe before selecting them and stayed there three months, disdainful of the effect this would have on the progress of plaintiff's work. But not only is the Government liable for wilful delay, it is liable for any delay except one caused by the exercise of a reserved right or one brought about by an act of God, of the law, or the other party. United States v. Gleason, 175 U.S. 588, 602, 20 S.Ct. 228, 44 L.Ed. 284; Carnegie Steel Co. v. United States, 240 U.S. 156, 164–166, 36 S.Ct. 342, 60 L.Ed. 576; Columbus Ry., Power & Light Co. v. City of Columbus, 249 U.S. .399, 410–414, 39 S.Ct. 349, 63 L.Ed. 669, 6 A.L.R. 1648. We think the plaintiff has carried the burden upon it when it shows failure to deliver the models on time, and that thereupon the burden of showing an excusable reason therefor is cast upon the defendant. No reason has been shown for the delay in this case except the meticulosity of the architect in passing on the models. This is not a sufficient excuse. The Government should have ordered the models in sufficient time to have enabled the contractor to proceed without delay, or, if it desired to furnish them in its own good time with impunity for any delay caused the contractor, it should have incorporated in the contract a provision exempting it from liability for failure to furnish them when needed.

Had it done the latter the contractor could have protected itself by increasing its contract price; but under all prior decisions of this court and of the Supreme Court as well, the contractor believed, and had a right to believe, that, if the Government delayed it, it would respond in damages. We have no reason to conclude, therefore, that the contractor, in fact, protected itself against these delays. In such a situation justice requires, and the law, as announced by this court and the Supreme Court, requires that the Government compensate this contractor for those damages which it has caused it to suffer.

Plaintiff is entitled to recover the cost of temporary heat and its overhead expenses during the six months' delay. This amounts to a total of $26,851.16. Judgment for this amount will be entered. It is so ordered.

MADDEN, JONES, and LITTLETON, Judges, concur.

WHALEY, Chief Justice, took no part in the decision of this case.